Green, Judge,
concurring:
I concur in the foregoing opinion to the effect that plaintiff’s cause of action is based upon a treaty provision. Such being the case, it is clear that this court has no jurisdiction of the case. The plaintiff, however, insists that the claim is based upon a statutory provision passed by both Houses of Congress and not upon a treaty. Conceding for the sake of the argument only that this statement is correct, I am clearly of the opinion that a case is not stated in the petition.
The material portions of the commercial treaty between the United States and Cuba involved in the case are set out in the foregoing opinion, together with the statutory provisions pertaining thereto so far as material to the consideration of the case at bar.
The tax in controversy was levied by section 10 of what is commonly called the “Tariff act of July 24, 1897,” but I assume that the fact that the provision under which the tax was assessed was one of the sections of a tariff bill will not be considered as making the tax levied thereby an import duty. It is a very common practice on the part of Congress to intermingle in the same acts customs duties and internal-revenue provisions. Nor do I think that the fact that in some provisions of the internal-revenue law the tax on cigars is made to apply (as it was in section 3402, Revised Statutes, act of July 20, 1868) to cigars imported from foreign countries is at all material. Plaintiff’s principal contention is that the tax which is sought to be recovered back in this case is in substance and nature an import duty, *305 but the argument presented on behalf of plaintiff is as I think based on a misconception of the true distinction between an import duty and an internal-revenue tax.
The basis of an import duty is the fact that the goods have been imported, but it is entirely immaterial in the assessment of an internal-revenue tax whether the articles have been imported or not. An import duty could be made either by law or regulation a condition precedent to foreign goods entering our boundaries, although as a matter of fact for convenience this is not done. An internal-revenue tax can not be levied or collected until the goods are located within our boundaries. The customs duty is levied on the privilege of bringing foreign goods into our country; the internal-revenue tax in this case .is levied on the privilege of removing the goods after they have come within our boundaries for consumption or sale. This will be observed from the language of the provision which imposes the tax in question, which is “ upon cigars * * * sold or removed for consumption or sale,” and like any other tax upon a privilege it may be collected before the privilege is. exercised (as it usually is) and before the cigars are actually removed for sale. The removal for sale does not refer to the removal from foreign countries. The privilege of removal which is taxed is one which is to be exercised within this country, otherwise the tax would not apply to domestic cigars, as it unquestionably does.
Counsel for plaintiff say in their brief—
“ Congress, of course, has no power to levy an excise tax on imported goods while they are still in customs custody, í¡! ^
It needs no argument to show that a State could not levy a tax affecting imported goods while they were still in the custody of the Government, but I know of nothing to prevent Congress from so doing if it is considered advisable. As Congress is given complete power to legislate with reference to importation of foreign goods, it may enact statutes which apply to imported goods while still in the custody of *306 the customs officials. It is true that the statutes imposing the tax require the affixing of stamps in payment thereof while the cigars are still in the custody of the collector of customs; but, as before stated, this is not upon the privilege of importation but upon the privilege of removal for sale and applies wherever the cigars may be found — whether in the custody of the customs officials or elsewhere. No reason can be given why Congress may not require the stamps to be affixed while the cigars are still in the custody of the collector of customs. In so doing, it is merely providing for the collection of the tax in advance of the privilege taxed being exercised, and if the cigars were released without the stamps being so affixed it would probably result in much evasion of the law. Section 3402, Revised Statutes (act of July 20, 1868) accordingly provided that cigars imported from foreign countries should pay in addition to the import duties imposed thereon the tax prescribed by law for cigars manufactured in the United States, and should have the same stamps affixed and canceled by the owner or importer while they were in the custody of the proper customhouse officer. The language used in imposing the tax by section 3402 should specially be noted. The tax is in addition to the import duty, not an additional import duty. The requirement that the stamps should be affixed and canceled while in the custody of the customhouse officer is merely to prevent evasion, otherwise they could just as well be affixed after ¿he property had passed out of the hands of the customs authorities. In none of the acts which have been cited in connection with the tax in controversy is the importation made the basis of the tax. The Government simply refuses to release the goods until the internal-revenue tax is paid. The necessity of preventing the evasion would be abundant authority for Congress so requiring the collection of the tax, if anything else was needed beyond its general authority with reference to imported goods and imposing excise taxes.
In Jordan, Collector, v. Roche, 228 U. S. 436, it appeared that by proclamation of the President issued under authority *307 of law “ all tariff duties on merchandise coming into the United States from Porto Rico ceased ” (italics in Supreme Court opinion), but “ articles of merchandise of Porto Rican manufacture coming into the United States shall pay ‘ a tax equal to the internal-revenue tax imposed in the United States upon the like articles of merchandise of domestic manufacture.’ ” It was held in that case that bay rum imported from Porto Rico was subject to the internal-revenue tax upon distilled spirits, notwithstanding all import duties had ceased. It is manifest that this holding is contrary to the logic of plaintiff’s argument, the basis of which is that any tax which is laid upon domestic and imported articles alike is an import tax when it applies to articles that have been imported.
Counsel for plaintiff cite several decisions by the United States Court of Customs Appeals which tend to sustain their position, but I can not follow the reasoning upon which these decisions were based. It is quite correct to say that calling an excise duty an internal-revenue tax does not make it such; but I think it is equally true that calling a tax a customs duty because it includes with others goods which have been imported does not make it in fact a customs duty. The Federal Government does not have to wait until goods pass out of the hands of the customs officials in order to impose an indirect tax which may be assessed upon them. It has, as I think, every right and authority to impose such a tax while the goods are in the custody of the customs officials and say, as it did in this case, that they shall not release the goods until the stamps required by the law are affixed. The cases of Brown v. State of Maryland, 12 Wheat. 419, and May v. New Orleans, 178 U. S. 496, appear to me to have no application. The opinions and judgments rendered therein were upon altogether different facts and upon altogether different questions.
On the grounds stated above, as well as upon those set forth in the majority opinion, I conclude that the demurrer should be sustained.