**DE FREMERY & CO. v. UNITED STATES.**
Customs Appeal No. 4382.

Court of Customs and Patent Appeals.
June 10, 1943.

Rehearing Denied Oct. 4, 1943.

Lawrence & Tuttle, of San Francisco, Cal. (Frank L. Lawrence and Geo. R. Tuttle, both of San Francisco, Cal., of counsel), for appellant.

Paul P. Rao, Asst. Atty. Gen., (Joseph F. Donohue, Sp. Atty., of New York City, of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

In 1936 and 1937 appellant imported into this country from France, at the port of San Francisco, three kinds of alcoholic products, the first of which is known by various names—cassis, Cazanove cassis, and creme de cassis—and which will be referred to hereafter as cassis; the second, green menthe; and the third, cherry cordial. All three products were, by the collector, assessed with customs duty as "cordials" at $2.50 per proof gallon under paragraph 802 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 802, as modified by the Trade Agreement with France, T.D. 48316. 53 Stat. 2236, 2274. The collector also assessed internal revenue tax of "$2.-00 on each proof gallon or wine gallon when below proof" on all the merchandise as "distilled spirits" under section 600(a) of the Revenue Act of 1918, 40 Stat. 1057, 1105, as amended by the Revenue Act of 1926, § 900, 44 Stat. 9, 104, and as further amended by the Liquor Taxing Act of 1934, § 2, 48 Stat. 313, 26 U.S.C. (1934) § 1150(a) (1), 26 U.S.C.A. Int.Rev.Code, § 2800(a) (1).

Appellant first protested the levying of the internal revenue tax on all the merchandise, claiming that it was "assessable at the rate of 1¼ cents on each one-half pint or fraction thereof, in accordance with Section 613(a) of the Revenue Act of 1918, as amended by § 319(d) of the Liquor Tax Administration Act approved June 26, 1936," [49 Stat.1939, 1952] or "taxable as a wine containing more than 14% and not more than 24% alcohol."

In an amended protest, appellant claimed that "this merchandise is not subject to internal revenue tax, not being 'distilled spirits' within the meaning of section 600 (A), revenue act of 1918, as amended; or, if subject to internal revenue tax, the proper rate is 1¼ cents per one-half pint under section 613, revenue act of 1918, as amended."

An alternative claim was made that the cassis "is taxable under section 611 of the revenue act of 1918 as amended, under the provision for wine containing more than 14% and not more than 24% alcohol, either at 20 cents or 40 cents per wine gallon * * *."

In said amended protest appellant also challenged the collector's classification of the cassis as "cordials" under paragraph 802 of the Tariff Act of 1930 as modified by the French Trade Agreement and claimed that it is dutiable at 70 cents per gallon plus $5 per proof gallon on the alcohol contained therein under paragraph 806. An alternative claim was made that the cassis is dutiable, either directly or by similitude, under paragraph 804 as beverages similar to wine, at $1.25 per gallon or at 75 cents per gallon under said paragraph by virtue of the French Trade Agreement. The correctness of the assessment of customs duty on the green menthe and the cherry cordial under paragraph 802 was not challenged.

The United States Customs Court, Third Division, dismissed one of appellant's protests, which appellant had abandoned, and overruled the other, entering judgment in favor of the Government. The importer petitioned for a rehearing, which was granted. After considering the further arguments advanced by the importer, the trial court, in a second opinion, adhered to its former judgment. From said judgment overruling the protest, importer has here appealed.

Since two principal issues are involved in this case, we deem it advisable to treat them in separate portions of this opinion. We shall first consider the customs issue.

### The Customs Issue

The pertinent provisions of the Tariff Act of 1930 necessary for consideration here read as follows:

"Par. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon."

"Par. 802 (Amended by Trade Agreement with France, T.D. 48316, 53 Stat. 2236, 2274.)

"Brandy .......... $2.50 per proof gal.

"Cordials, liqueurs, kirschwasser, and ratafia .............$2.50 per proof gal."

"Par. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: Provided, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly."

"Par. 806(a). Cherry juice, prune juice, or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing * * * one-half of 1 per centum or more of alcohol, 70 cents per gallon and in addition thereto $5 per proof gallon on the alcohol contained therein * * *."

It is appellant's contention that the cassis involved is not a cordial or a liqueur and therefore is not subject to the tariff duty provided for in the French Trade Agreement. This contention, as before stated, is not made with respect to the green menthe or the cherry cordial. Appellant's argument is that under certain decisions hereinafter referred to, it is settled law that cordials and liqueurs are beverages and that cassis, being admittedly not consumed in the condition imported but used chiefly for making cocktails and as flavoring for drinks, such as blending the same with whisky, gin, or brandy, was excluded from the terms "cordials" and "liqueurs" and that these decisions and holdings were called to the attention of Congress in the enactment of subsequent legislation, and that therefore legislative adoption of judicial construction and long-continued administrative practice is thoroughly established. The argument embraces the contention that "cordials," the term under which the cassis was classified, includes only such "beverages" as are of comparatively high alcoholic content, 35 or 40 per cent, whereas the instant merchandise, cassis, contains only 15 per cent alcohol.

The trial court held that appellant had "not established by the record" that the cassis was not a cordial as classified by the collector.

There is no dispute as to the character or manner of production of the products involved here. The record shows that the cassis contains 15 per cent alcohol by volume, or 30 proof; that it contains 430 grams of sugar per liter (43 per cent sugar by weight); and that it is manufactured in the following manner: "Black currants

are put in wine alcohol for 50 or 60 days. The juice thus obtained is mixed with sugar and there results 'creme de cassis' (black-currant cordials.)"

On the issue of the levy of said customs duty on the cassis, we think we must accept as being correct the importer's contention that, upon the instant record and the application of settled principles of law hereinafter referred to, the cassis cannot be regarded as a cordial as classified by the collector. While the alcoholic content may not necessarily be controlling, it is a matter that is entitled to some consideration, especially in view of the fact that it was held by the Board of General Appraisers (now the United States Customs Court) in the case of O. C. Blache & Co. v. United States, T.D. 23253, as follows:

"The article is variously invoiced as 'cassis fruit juice,' 'fruits au jus,' and 'fruit juice,' and was imported in casks. It consists of the juice expressed from the black currant, and contains less than 18 per cent of alcohol, which the testimony shows to have been added to prevent fermentation. * * *

"It appears from the testimony, both of the importers and of the examiner of such merchandise at the port of New York, that cordials usually contain not less than 35 or 40 per cent of alcohol, and are commonly imported in bottles and not in casks. The merchandise under consideration is unquestionably a fruit juice containing less than 18 per cent of alcohol, and should be so classified. * * * goods of this character contain at least 35 per cent of alcohol and are used as cordials, while the article in question is used for flavoring drinks, either plain or aerated, and in making puddings and sauces, and for other similar purposes."

C. W. Craig & Co. et al. v. United States, T.D. 28910 (Abstract No. 18538), another decision by the Board of General Appraisers, related to merchandise "imported in bottles labeled 'Creme de Cassis, Dijon,' also 'Black currant juice made in Dijon, France.'" It was held to be dutiable as fruit juice rather than as a cordial. The alcoholic content of the merchandise in that instance seemed to be the controlling factor. .

Other related circumstances appearing in Notes on Tariff Revision, 1908, p. 359, and Summary of Tariff Information, 1921, p. 833, and also definitions in Web-

ster's International Dictionary seem to throw some light on this phase of the issue favorable to appellant's contention. We think, however, that it has long been settled in customs jurisprudence that a cordial is a beverage and that such beverages are consumed by drinking in their finished condition as cordials and not used as a flavoring in other alcoholic drinks.

The trial court in the instant case held that the cassis was not a beverage when considered with reference to the application of that term in the phrase, "vermuth * * * and similar beverages not specially provided for," in paragraph 804, and referred to this court's decision in Strohmeyer & Arpe Co. v. United States, 28 C.C.P.A., Customs, 34, C.A.D. 121. In that case this court held that grenadine, which is used as a flavoring for drinks, was not included in paragraph 808 of the Tariff Act of 1930 under the term "beverages" because in its imported condition it was not so used but was used as a flavoring for drinks. Several authorities were there cited and discussed and need not be discussed here.

Under the admitted statement of facts in this case, and without going into detail in discussing the many different authorities cited and relied upon by the parties to this controversy, we are of the opinion that appellant's contention that cassis is not a cordial, and therefore not covered by the French Trade Agreement, is sound.

On the issue with reference to the customs classification of the cassis, it remains to be determined whether appellant has sustained its claim that the merchandise is dutiable for tariff purposes under either paragraph 804, directly or by similitude, or paragraph 806 as a fruit juice or fruit sirup.

As before indicated, the Blache case would suggest that the instant merchandise, cassis, is a fruit juice. The merchandise involved in that case was cassis containing less than 18 per cent alcohol and was used as a flavoring for drinks. Similar merchandise was involved in the Craig case. It contained 16.85 per cent alcohol. The Board of General Appraisers there held that it was not a cordial but that it fell within the category of a fruit juice containing alcohol.

In this view of the case, it is unnecessary for us to consider the contention that the cassis is dutiable under the provisions of paragraph 804 as "vermuth * * * and similar beverages," since the applicable provision of paragraph 806 for fruit juices and fruit sirups is more specific than the term in said paragraph 804. The merchandise is either a fruit juice or a fruit sirup, both dutiable at the same rate, and it is immaterial here which of the provisions covers the goods. We think, therefore, the court below erred in overruling appellant's protest with respect to said classification and assessment of duty by the collector as to the involved cassis, and that it should have sustained said protest in holding the same to be dutiable under said provision of paragraph 806 at 70 cents per gallon and $5 per proof gallon on the alcohol contained therein.

The Government seems to rely upon the decision of this court in the case of Batjer & Co. et al. v. United States, 11 Ct.Cust. Appls. 60, T.D. 38726, because this court there defined cordials as follows (relying upon the lexicographical authorities): "Cordials are a special kind of liqueur prepared either by adding brandy, alcohol, or other spirits and sugar to fresh fruit juices, or by distilling the fermented juices of fruits having a special flavor, or by fortifying an aromatized wine with brandy or other spirits. * * *"

We see nothing in this definition which warrants this court in concluding that the cassis at bar is a cordial for customs purposes. True enough, many cordials fall within that definition, but an alcoholic compound that is used as a flavoring is not a cordial within the meaning of the term here under consideration because, as before stated, cordials are drunk without dilution or mixing with other ingredients.

### The Internal Revenue Tax Issue

We have hereinbefore set out the manner of production of the involved cassis. The other two imported products are prepared in the following manner:

Green menthe—wine alcohol and a quantity of mint plants are distilled, and after distillation the first and third runs are discarded. The second run is kept and mixed with sugar syrup. It contains an alcoholic strength of 30 per cent by volume, or 60 proof, with 370 grams of sugar per liter.

Cherry cordial—fresh cherries are put in alcohol for about sixty days to obtain cherry juice, and then this juice is mixed with wine alcohol and sugar syrup. The alcoholic strength is 32 per cent by volume, or 64 proof, with 255 grams of sugar per liter.

Appellant challenges the correctness of the assessment of internal revenue tax of $2 per gallon under section 600(a) of the Revenue Act of 1918, as amended by section 2 of the Liquor Taxing Act of 1934, and claims in its amended protest that none of the merchandise is subject to internal revenue tax, but that if subject to tax the proper rate is 1¼ cents per one-half pint under section 613(a) of the Revenue Act of 1918, as amended (by section 319(d) of the Liquor Tax Administration Act of 1936, 49 Stat.1939, 1952) or alternatively, with respect to the cassis, that assessment should be made under section 611 of the Revenue Act of 1918, as amended (by section 319(c) of the Liquor Tax Administration Act of 1936), as wine containing more than 14 per cent and not more than 24 per cent alcohol, either at 20 cents or 40 cents per wine gallon.

It is the contention of appellant on this phase of the case that all three articles involved here are not "imported distilled spirits" within the meaning of the statutory provisions under which the tax was levied. This contention is based in part upon the fact that the courts have consistently, throughout the years, distinguished between "distilled spirits" and "cordials." Our attention is directed to six decisions by this court rendered from 1921 to 1925, the substance of some of which was to the effect that "distilled spirits" did not embrace cordials, liqueurs, and other mixtures and compounds produced by mixing distilled spirits with other ingredients, which mixing did not involve distillation.

We have hereinbefore held that the cassis is not a cordial, and while green menthe and cherry cordial, as the issues are here presented, are not in the same category as cassis for customs purposes, it is unimportant to consider this fact in deciding the internal revenue tax issue, in view of our construction of the controverted taxing provisions.

The section of the statute under which the internal revenue tax was assessed on all the merchandise at bar appears in the 1934 U.S. Code, Title 26, § 1150(a) (1). 26 U.S.C.A. Int.Rev.Code, § 2800(a) (1). That and other sections of the Code pertinent here read as follows:

"Section 1150. Tax—(a) Rate—(1) Distilled spirits generally. On and after January 12, 1934, there shall be levied and collected on all distilled spirits produced in or imported into the United States an internal revenue tax at the rate of $2.00 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. (Feb. 24, 1919, c. 18 § 600(a) (3), (4), 40 Stat. 1105; Feb. 26, 1926, c. 27, § 900, 44 Stat. 104; Jan. 11, 1934, c. 1, §§ 2, 13, 48 Stat. 313, 316.)

\* \* \* \* \*

"(3) Products of distillation containing distilled spirits. All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits. (R.S. § 3254.)

\* \* \* \* \*

"§ 1158. Definitions—(a) Distiller. Every person who produces distilled spirits, or who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits, or who, by any process of evaporization, separates alcoholic spirit from any fermented substance, or who, making or keeping mash, wort, or wash, has also in his possession or use a still, shall be regarded as a distiller. (R.S. § 3247.)

"(b) Distilled spirits, spirits, alcohol, and alcoholic spirit. (1) Distilled spirits, spirits, alcohol, and alcoholic spirit, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, *including all dilutions and mixtures of this substance*. (R.S. § 3248.)

"(2) As used in sections 1151a, 1151b, and 1152a to 1152g, the term 'distilled spirits' includes products produced in such manner that the person producing them is a rectifier within the meaning of section 1398(g). (Jan. 11, 1934, c. 1, Title 1, § 10(e), 48 Stat. 315.)" [Italics ours.] 26 U.S.C.A. Int.Rev.Code, § 2809(b) (1, 2).

The trial court held that the three kinds of merchandise involved here were taxable for internal revenue purposes as *distilled spirits* (provided for in section 600(a) of the Revenue Act of 1918, as amended), the green menthe by virtue of the language used in R.S. § 3254 (see subsection (3) of section 1150(a) of the 1934 Code, supra), which language orginally appeared in the Joint Resolution of February 5, 1867, section 1, 14 Stat. 565, and the cassis and

cherry cordial by virtue of the language of R.S. § 3248 (see section 1158(b) (1) of the 1934 Code, supra, 26 U.S.C.A. Int.Rev.Code, § 2809(b) (1)). R.S. § 3248 reads as follows: "Distilled spirits, spirits, alcohol, and alcoholic spirit, within the true intent and meaning of· this act, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, *including all dilutions and mixtures of this substance;* and the tax shall attach to this substance as soon as it is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process." [Italics ours.] This language had previously been enacted by Congress as a part of section 4 of the Act of July 20, 1868, 15 Stat.144.

In view of our conclusion that the definition in the last abovequoted provision justifies the action of the collector and the decision of the trial court, we find it unnecessary to consider the question of the applicability of R.S. § 3254.

The War Revenue Act of 1917, 40 Stat. 300 (which placed internal revenue taxes on many different products), for the first time in the nation's history, so far as we have been able to determine, levied an internal revenue tax upon *imported* "distilled spirits." Subsequently to that act, Congress enacted the Revenue Act of 1918, which became effective on February 24, 1919. That act also provided for an internal revenue· tax upon *imported* "distilled spirits." Neither of these acts, however, defined imported distilled spirits, nor has any definition of that term appeared in any subsequent enactment, except for certain purposes which are not pertinent here.

So, the question presented here is whether or not R.S. § 3248, providing for "all dilutions and mixtures of this substance" [alcohol], is applicable to the merchandise at bar. It is admitted that the section has never been repealed and was in full force and effect on the date of the instant importation.

The Act of July 20, 1868, supra, in which the language of R.S. § 3248 first appeared, had no relation whatever to imported distilled spirits, because at that time there was no internal revenue tax levied upon imported distilled spirits. The last part of

R.S. § 3248, when it was first enacted in said Act of July 20, 1868, clearly indicates that the language thereof applied only to domestic products. In other words, the language "and the tax shall attach to this substance as soon as it is in existence as such * * *" clearly shows that Congress at that time had in mind domestic liquors.

In 1873 Congress authorized a revision of all federal statutes, general and permanent in their nature, and in 1874 the Revised Statutes of the United States became, and still are except where repealed or modified, the federal statutes in full force and effect. In that revision, Congress, in chapter four, under "Distilled Spirits" of Title XXXV, "Internal Revenue," used the last above-quoted language as R.S. § 3248. The Revised Statutes consist of more than five thousand sections, all of which were included in one act, approved by the President on June 22, 1874. In other sections of the act there were various provisions for customs duties on alcoholic liquors of various descriptions, including "distilled spirits, spirits, cordials," etc., etc. R.S. § 3248, when imported into the act, was intended by Congress to define "distilled spirits, spirits, alcohol, and alcoholic spirit" wherever such terms appeared in the act. Such is clear from the language of said section reading, "within the true intent and meaning of this act," referring to the act as a whole, i.e., to all the Revised Statutes. For example, for customs purposes, it defined "spirits" when used in a phrase like "Brandy and * * * other spirits manufactured or distilled from grain" etc. See R.S. § 2504, Schedule D. It also defined "distilled spirits" which, in the act, when domestically produced, were taxable as such for internal revenue purposes.

It is our view that when Congress enacted R.S. § 3248, it was then intended to affect those things mentioned in that act (the Revised Statutes) or other articles to which it might later apply. The section remained unrepealed throughout the years. It afforded a proper definition of distilled spirits, whether imported or domestic. The mere fact that the latter portion of the provision has to do only with domestic liquors does not change the situation with respect to the first portion thereof. The definition in the first part of the section is complete, and it is our view that when Congress enacted the revenue acts above referred to, levying an internal revenue tax

on *imported* distilled spirits, as well as domestic distilled spirits, it had in mind the applicability of the definition in R.S. § 3248, which was unrepealed and in full force and effect. Otherwise, it seems unbelievable that Congress, having so often dealt with the question, should not have given a definition of the term "distilled spirits" in each of the internal revenue acts which apply to imported distilled spirits. Congress, knowing that R.S. § 3248 was in full force and effect, evidently deemed it unnecessary, when it enacted internal revenue acts taxing imported distilled spirits, to repeat that which was already in full force and effect in order to reach certain compounds and mixtures containing distilled spirits.

It is clear to us that all three of the imported articles, containing alcohol as they do, fall within the term "including all dilutions and mixtures of this substance." Certainly, alcohol has been mixed with other substances to make the imported products.

■ The definition, in referring to "this substance", says "which is commonly produced by the fermentation of grain, starch, molasses, or sugar." The instant importation is not shown to have been a product of grain, starch, molasses, or sugar, but it will be noticed that the section also speaks of "alcohol" and "spirit of wine." It is to be supposed that in 1868 and in 1874, as now, alcohol and spirit of wine, the latter of which the Standard Dictionary defines as "ordinary alcohol," were commonly produced by the fermentation of grain, starch, molasses, or sugar. This term, however, i.e., "commonly produced by the fermentation of grain, starch, molasses, or sugar" does not exclude the instant merchandise. It merely tells how distilled spirits are "commonly" produced. It is a matter of common knowledge that alcohol can be produced from wine (as was the alcohol in the instant goods), which is made of fruit, or that a very potent alcoholic product can be distilled from hard cider. But these facts do not change the situation that the products defined in R.S. § 3248 are "commonly" made from the four things there referred to.

Appellant contends with great earnestness that the term "dilutions and mixtures" was never intended to apply to anything except such dilutions and mixtures as are the direct products of distallation, such as mash, wort, and wash. Appellant urges that Congress, by the use of this language, was attempting to require distillers in this country to pay tax on their fermented wort from which spirit is distilled; that these unfinished substances are, in a true sense, dilutions, containing a great amount of water, sugar, etc. Even if that were regarded as the true situation up to the enactment of the internal revenue laws affecting imported distilled spirits, it would not change the conclusion here. Our holding is based upon the proposition that Congress, R.S. § 3248, being in full force and effect when it enacted the internal revenue tax provisions here in controversy, intended that the new law be read in the light of the definitions then in full force and effect.

■ Under such circumstances we cannot agree with the contentions of appellant either that the imported merchandise is not taxable as "distilled spirits" under section 600(a) of the Revenue Act of 1918, as amended, or that it is taxable elsewhere as claimed in appellant's protest. We have examined with care the protest claim of appellant that if the merchandise is taxable at all under existing law for internal revenue purposes, it would be at the rate of 1¼ cents per one-half pint under section 613(a) of the Revenue Act of 1918, as amended, or that the cassis is taxable as a wine containing more than 14 per cent and not more than 24 per cent alcohol under section 611 of said act, as amended. We find that these provisions have no applicability whatever to the instant merchandise. The goods are not wines and they are not fortified.

The Government relies upon the case of Jordan v. Roche, 1913, 228 U.S. 436, 33 S. Ct. 573, 574, 57 L.Ed. 908, in support of its contention that the term "distilled spirits" covers the instant merchandise. That case involved some issues with which we are not here concerned, and had to do with bay rum imported from Porto Rico, subject to the Foraker Act, 31 Stat. 77. That act provided for the levying of a tax on Porto Rican articles "equal to the internal revenue tax imposed in the United States upon the like articles of merchandise of domestic manufactures." 26 U.S.C.A. Int.Rev. Code, § 3360(a). The question there related to the taxable status of domestic articles which were like the imported bay rum, and the court said: "Bay rum is a fragrant spirit obtained by distilling rum with the leaves of the bayberry, or by mixing various oils with alcohol. We must

seek its likeness in the revenue laws, and the government contends that it is found in §§ 3248, * * *."

The court quoted R.S. § 3248 and stated that the "language of the revenue laws is comprehensive enough to cover all distilled spirits," and added, "no matter in what state it may be subsequently separated, or in what other substance it may be subsequently transferred." The court also said, "The purpose of the law to impose a tax upon the compounds of alcohol under the single designation of 'distilled spirits' receives confirmation from the exemptions from the tax." Certain exemptions were then referred to.

■ It is true, there was no holding in that case that R.S. § 3248 was ever intended to apply to imported alcoholic compounds, but the scope of that section was emphatically declared, and since it is our position that the section is effective in defining the merchandise at bar, we think that decision is pertinent in considering the comprehensiveness of the section. In so far as the Supreme Court said that it covered merchandise "no matter in what state it may be subsequently separated or in what other substance it may be subsequently transferred," we are of the opinion that appellant's contention that only such dilutions and mixtures as were direct products from the distillery were intended to be covered, is fully answered.

Appellant has stressed the applicability of the Batjer case, supra, to the internal revenue tax issue in the case at bar. It is true that in that case the court pointed out that: "For more than 75 years spirits distilled from grain and other materials and cordials have been differentiated by Congress and have been provided for in numerous tariff acts as separate and distinct entities. * * * In the absence of any manifest legislative intent to the contrary we must conclude, and in fact the Government admits, that the distinction between cordials and distilled spirits still continues and that the latter designation does not include the former. * * * From this it follows that the cordials under consideration are not classifiable as distilled spirits and that they were not subject to the additional duty of $2.10 a gallon imposed by section 300 of the war revenue act of 1917."

Among the statutory provisions involved in that case, there was a specific provision for cordials (without limitation), and since Congress had specially treated them, it was the view of the court that it did not, in the then existing laws, contemplate that a cordial was a distilled spirit covered by section 300 of the War Revenue Act of 1917. While that decision may be pertinent in the respects above indicated, it is obvious that the situation there, where cordials were by name made taxable for internal revenue purposes, was quite different from the situation at bar. See section 319(d) of the Liquor Tax Administration Act of 1936, 49 Stat. 1939, 1952.

The judgment of the United States Customs Court is reversed in respect to its holding that the cassis is dutiable as a cordial under paragraph 802 of the Tariff Act of 1930, but it is affirmed in so far as it holds all the imported merchandise taxable as distilled spirits under section 600 (a) of the Revenue Act of 1918, as amended. The cause is remanded for further proceedings not inconsistent with the views herein expressed.

Modified and remanded.