PEONY PARK, Inc.
v.
O'MALLEY, Collector of Internal
Revenue.

WEBBER
v.
O'MALLEY, Collector of Internal
Revenue.

WEBBER et al.
v.
O'MALLEY, Collector of Internal
Revenue.

KING et al.
v.
O'MALLEY, Collector of Internal
Revenue et al.

PAULEY LUMBER CO.
v.
O'MALLEY, Collector of Internal
Revenue et al.

SLOAN et al.
v.
UNITED STATES et al.

FERGUSON et al.
v.
UNITED STATES.

SCHAMP et al.   v.   UNITED STATES.

HOWELLS VOLUNTEER FIRE
DEPT.
v.
UNITED STATES.

Civ. Nos. 13–51, 53–52, 54–52, 109–52,
114–52, 33–53, 86–53, 87–53, 88–53.

United States District Court,
D. Nebraska, Omaha Division.
June 10, 1954.

William J. Hotz, William J. Hotz, Jr., and Robert M. Kane, Omaha, Neb., for plaintiffs.

Donald R. Ross, U. S. Atty., Dist. of Nebraska, Omaha, Neb., H. Brian Holland, Asst. Atty. Gen., and Andrew D. Sharpe, and Fred J. Neuland, Special Assts. to the Atty. Gen., for defendants.

DONOHOE, Chief Judge.

The court is presently concerned with nine tax cases involving substantially the same narrow point. The procedure followed with respect to assessment and collection of the taxes was not precisely the same in each individual case, but the parties seem to concede, for the purpose of reaching a determination in all the cases on the merits, that the necessary conditions precedent to institution of these actions for tax refunds by the petitioners have been fulfilled. 26 U.S.C.A. § 3772. In connection with each of the cases the court makes the following special

### Findings of Fact:

Each of the taxpayers operates a dance hall or ballroom, either indoors or outdoors which consists of a dance floor of various sizes, around which there are tables, chairs and booths provided as seating accommodations for the patrons. Music is furnished for dancing by an orchestra or band regularly during certain nights of the week. A charge for admission to the ballroom is made and during the periods involved, the taxpayers collected from their patrons admissions taxes under Section 1700(a) of the Internal Revenue Code on the amounts received from their patrons for the price of admission to their dance hall. In connection with the operations of taxpayers' dance halls, refreshments, including sandwiches, soft drinks, beer and cigarettes are served for the usual charges to those patrons desiring the same. The Commissioner has assessed against each of the taxpayers a cabaret tax under Section 1700(e) of the Internal Revenue Code.

### Discussion

In Avalon Amusement Corporation v. United States, 1948, 165 F.2d 653, the Court of Appeals for the Seventh Circuit held that a dance hall for which there was an admission charge, and in connection with which beer, soft drinks and confections, but no meals, were sold, was a "roof garden, cabaret or other similar place" within the provisions of Section 1700(e) of Title 26, U.S.C. (1946 Ed.) Shortly after this decision the same question arose in this circuit in the Northern District of Iowa. Larry Geer and his wife operated a ballroom for which an admission charge was made. Lounging space serving 17½ per cent of the capacity of the dance floor was available to the patrons and a fountain was operated

in connection therewith. Tobacco, soft drinks and confections were served at the fountain at regular retail prices. After careful and mature deliberation which is reflected in an extended and instructive memorandum, Judge Graven reached the conclusion that such ballroom was not a roof garden, cabaret or other similar place within the meaning of 1700(e). Geer v. Birmingham, D.C. N.D.Iowa 1950, 88 F.Supp. 189. However, the Court of Appeals for the Eighth Circuit reached the opposite conclusion Birmingham v. Geer, 1950, 185 F.2d 82, 85, and the Supreme Court of the United States denied certiorari, 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686.[1] Judge Woodrough, in the Court of Appeals opinion points out:

"The facts controlling decision in the Seventh Circuit are analogous to the facts here and this court must either declare itself in accord or announce decision in conflict. Despite vigorous arguments to the contrary, it appears as clear to this court as it did to the court in the Seventh Circuit 'that the (taxpayer's) dance hall comes within the (statute's) definition of a " * * * hall * * * where music and dancing privileges * * * are afforded to the patrons in connection with the serving or selling of * * * refreshment * * *".' "

After the decision in Birmingham v. Geer, supra, Congress amended the provisions of the Internal Revenue Code relating to the tax on cabarets and roof gardens by Section 404 of the Revenue Act of 1951, 26 U.S.C.A. Int.Rev.Acts, page 348, which provides as follows:

"(a) *Ballrooms and dance halls.* —Section 1700(e) (1) (relating to tax on cabarets, roof gardens, etc.) is hereby amended by inserting after the second sentence thereof the following new sentence: 'In no case shall such term include any ballroom, dance hall or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a "roof garden, cabaret or other similar place." '

"(b) *Effective date.*—The amendment made by subsection (a) shall be applicable only with respect to periods after 10 antemeridian on the first day of the first month which begins more than ten days after the date of enactment of this act."

All parties concede that the taxes in these cases were levied and assessed for activities which occurred prior to the effective date of the above amendment. The Government argues that this court is bound to follow the decision in Birmingham v. Geer, supra, because the amendment should be given only prospective effect. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; United States v. Magnolia Petroleum Co., 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509; United States v. St. Louis, San Francisco and Texas Railway Company, 270 U.S. 1, 46 S.Ct. 182, 70 L.Ed. 435; Fullerton-Krueger Lumber Co. v. Northern Pacific Ry. Co., 266 U.S. 435, 45 S.Ct. 143, 69 L. Ed. 367; Southwestern Coal & Imp. Co. v. McBride, 185 U.S. 499, 22 S.Ct. 763, 46 L.Ed. 1010; Russell v. United States, 278 U.S. 181, 49 S.Ct. 121, 73 L.Ed. 255; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

Petitioners argue, on the other hand, that the 1951 amendment was merely declaratory of existing law and should be given retroactive effect in disregard of Birmingham v. Geer, supra. Jordan v. Roche, 228 U.S. 436, 33 S.Ct. 573, 57 L. Ed. 908. Cf. Girard Investment Co. v. Commissioner of Internal Revenue, 3 Cir., 1941, 122 F.2d 843. In support of their position petitioners refer to the legislative history of the 1951 Act. The House Report contains the following comment on Section 404:

---

1. The Court does not attach any particular significance to the denial of certiorari.

"This section amends section 1700 (e) (1) of the Internal Revenue Code to exempt from the cabaret tax bona fide dance halls, ballrooms, and other similar places where the serving or selling of food, refreshments, or merchandise is merely incidental to the music and dancing privileges furnished unless the conduct of the place is such as to bring it within the normal concept of a roof garden, cabaret, or similar place. This determination will be made by reference to the over-all operation of the establishment, including such factors as the relative income from the several activities over a period of time, the relative portion of space devoted to the various activities, the type of refreshments served or sold, the scope and character of the entertainment furnished, and the hours of operation.

"The purpose of this amendment is to make it clear that the principles set forth by the district court in the case of Geer v. Birmingham (88 F.Supp. 189) are controlling in the determination of whether the establishment involved is operating as a cabaret or as a dance hall, and to avoid the broad construction placed upon the statute in the case of Avalon Amusement Corporation v. United States (165 F.2d 653) and in the court of appeals decision reversing the decision of the district court in the Geer case (Birmingham v. Geer, 185 F.2d 82), which require that dance halls and similar establishments be taxed as cabarets, even though the serving or selling of food, refreshments, or merchandise is merely incidental.

"The amendment made by this section shall take effect at 10 a. m., on the first day of the first month which begins more than 10 days after the date of the enactment of this bill." [1-A.]

A reading of the legislative history indicates that Section 404 of the 1951 Revenue Act is a special interpretive statute.

"The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is prospective only." 2 Sutherland, Statutory Construction (3rd Ed. by Horack), § 3004, p. 225, citing United States v. Gilmore, 8 Wall. 330, 75 U. S. 330, 19 L.Ed. 396.

Considered in the peculiar circumstances of the present case as it is now posed before a federal court at the trial level the application of the foregoing rule seems unavoidable. Under the principle of stare decisis the decision in Birmingham v. Geer, supra, fixed the rule to be followed, in this circuit at least,[2] in applying the cabaret tax without regard to the 1951 amendment. The decision became as much a part of the earlier act, in its application in this circuit as it would have been if it had been drafted into such act originally. See 21 C.J.S., Courts, § 214, page 389. Consequently the 1951 amendment, passed to avoid the construction of the statute by the court of appeals for this circuit can hardly be considered as merely declaratory of existing law. It was intended to, and did, effectuate a change.

Since the 1951 amendment cannot be considered as merely declaratory, the general rule of statutory construction applicable in this case is that the amendment must be given only prospective effect because there is nothing, either explicitly or implicitly, contained in

1-A. U. S. Code Congressional and Administrative Service, 82nd Congress, First Session, 1951, Vol. 2, p. 1915.

2. It is unnecessary to pyramid authorities to the effect that in the federal courts a decision of the Circuit Court of Appeals is binding on the district courts in its circuit. 21 C.J.S., Courts, § 198, page 348, note 20.

the act indicating that it should be applied retrospectively. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858; Mogis v. Lyman-Richey Sand & Gravel Corp., 8 Cir., 1951, 189 F.2d 130.

■■ Counsel for petitioners rely on the case of Jordan v. Roche, 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908, in which the following question was certified to the Supreme Court: "Was bay rum imported from Porto Rico subsequent to the passage of the act of April 12, 1900, and prior to the passage of the act of February 4, 1909, subject to the payment of a tax equal to the internal revenue tax imposed in the United States, under §§ 3248 and 3254, on 'distilled spirit, spirits, alcohol and alcoholic spirit?'" Prior to the 1909 act the court of appeals for the second circuit answered this question in the negative. Anderson v. Newhall, 161 F. 906. But when the same exact question arose in litigation occurring after the 1909 Act the court of appeals for the second circuit was dubious about its prior decision. It certified the question to the Supreme Court and received an answer in the affirmative. Mr. Justice McKenna made this appropriate comment:

> "It is insisted that this act is a declaration by Congress that bay rum was not subject to a tax under prior statutes. The history of the act rejects the contention and manifests that the act was passed in consequence of the decision in Anderson v. Newhall, and the other decisions to which we have referred. The law was not the declaration of a new policy, but a more explicit expression of the purpose of the prior law, made necessary by judicial construction of that law."

The case is in point except for one rather important factor. This is not the Supreme Court; nor is it the Court of Appeals. The Court of Appeals may entertain doubts as to the correctness of its previous decisions. It may even overrule them if it so desires. But this court may not. It must follow with humble respect the decisions announced by the Court of Appeals in this circuit. In this regard it should be noted that in a tripartite system of government such as ours where the legislative, executive and judicial authority is vested in distinct and independent branches, a judicial decision may not ordinarily be overruled by legislative fiat. If it were otherwise Congress would sit as a court of last resort and the separation of powers would be more fictional than real. Of course, Congress may change the law, whether it be born of judicial decision or legislative enactment. But the change, in the absence of a clear expression to the contrary, operates only prospectively. So it is in the case before us. The court is bound by Birmingham v. Geer, 8 Cir., 185 F.2d 82.

### Enforcement Policy

Petitioners introduced evidence relative to the enforcement policy followed by the Commissioner of Internal Revenue in administering section 1700(e) of the Internal Revenue Code. On January 19, 1951, letters were sent to various collectors of Internal Revenue by Charles J. Valaer, Deputy Commissioner of Internal Revenue, advising them that as a result of the decision in Birmingham v. Geer, 8 Cir., 185 F.2d 82, arrangements should be made to notify all dance halls located in their respective collection districts that a dance hall and ballroom in which food and refreshments are sold during the time music and dancing privileges are furnished is a "roof garden, cabaret or other similar place" within the meaning of 1700(e) of the Code. In these letters the respective collectors were instructed to take appropriate steps to insure that all dance halls which had not been reporting and paying the cabaret tax be advised of their liability in addition to such admissions taxes paid and that such liability would be incurred effective as of the date of notice from the collector's office. Most of the notices advised the taxpayers of their liability effective February 1, 1951. In other

words, the Commissioner adopted the policy in many states of collecting the tax only for periods after February 1, 1951; while in Nebraska he adopted a policy of collecting the tax for periods going back as far as 1948.

The adoption of this enforcement policy was in many respects unfortunate. It may be justified on the ground that the Commissioner was doubtful that the interpretation of the act by the Seventh and Eighth Circuit Courts of Appeals would be followed by other circuits and he did not want to involve the United States in expensive litigation to collect back taxes. Whatever his motive, the Commissioner's enforcement policy discriminated in favor of ballroom operators in states other than Nebraska. Further, the discrimination was intentional. Taxpayers argue that because of this enforcement policy the collection of the taxes involved in this case violates the uniformity clause of the United States Constitution, Art. I, § 8, Clause 1. Without belaboring the point it seems clear that *Congress* must levy excise taxes with geographical uniformity throughout the United States. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. Section 1700(e) of the Revenue Code, both before and after the 1951 amendment, applied by its terms to all states in the same manner. The section as enacted complies with the requirements of the Constitution.

The taxpayers argue that the Commissioner's enforcement policy has changed the effect of the statute, and that it is no longer uniform. The court cannot agree. The power to alter or repeal laws is a legislative power and executive officers may not by means of construction, rules and regulations, orders or otherwise, extend, alter, repeal, set at naught or disregard laws enacted by the legislature. 16 C.J.S., Constitutional Law, § 169, page 510. The letter of the Commissioner could not have the effect of changing the law. Insofar as the Commissioner adopted an enforcement policy contrary to the statute, the enforcement policy was unlawful. In the recent steel seizure cases the Supreme Court made it clear that it is not the function of the executive department of the government to make law.

"In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 487, 72 S.Ct. 863, 867, 96 L.Ed. 1153.

The executive branch of the government has no power to raise revenue. That power is in the Congress by Article I, § 8 of the Constitution. The power of the Commissioner of Internal Revenue to administer the revenue laws "starts and ends with the laws Congress has enacted." Cf. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 633, 72 S. Ct. 863, 888, 96 L.Ed. 1153.

In the cases under consideration the enforcement policy followed with respect to the taxpayers involved in the litigation is in keeping with the spirit and letter of the law. Insofar as these cases are concerned, neither the law nor its enforcement violates the Constitution.

Taxpayers position simply resolves itself to this: Since the Commissioner has unlawfully absolved taxpayers in other districts from paying their just share of taxes, the Court should compel the Commissioner to do the same in this district. The answer to this should be obvious to all. Courts are established to see that laws are complied with; not to sanction their violation.

The Court finds no merit in the other contentions presented by the taxpayers. Counsel for the Government shall prepare and submit for approval the appropriate judgments to be entered in all of these cases.