PEONY PARK, Inc., Appellant,

v.

George W. O'MALLEY, Collector of Internal Revenue, Appellee.

Geraldine L. WEBBER, Appellant,

v.

George W. O'MALLEY, Collector of Internal Revenue, Appellee.

Glen WEBBER and Arthur F. Schmidt, Appellants,

v.

George W. O'MALLEY, Collector of Internal Revenue, Appellee.

Blanche E. KING and Harry H. King, Appellants,

v.

George W. O'MALLEY, Collector of Internal Revenue, and D. V, Gordon, Director of Internal Revenue, Appellees.

PAULEY LUMBER COMPANY, Appellant,

v.

George W. O'MALLEY, Collector of Internal Revenue, and D. V. Gordon, Director of Internal Revenue, Appellees.

V. C. SLOAN and E. H. Sheffert, Appellants,

v.

UNITED STATES of America and George W. O'Malley, Former Collector of Internal Revenue for the District of Nebraska, Appellees.

Robert L. FERGUSON, Richard D. Ferguson, Roberta Ferguson, William L. Ferguson, and Robert J. Ferguson, d/b/a King's Ballroom, Appellants,

v.

UNITED STATES of America, Appellee.

Frank SCHAMP, Robert Schamp and Richard Schamp d/b/a East Hills Club, Appellants,

v.

UNITED STATES of America, Appellee.

HOWELLS VOLUNTEER FIRE DEPARTMENT, a Corporation, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 15266–15274.

United States Court of Appeals Eighth Circuit.

June 24, 1955.

William J. Hotz, Omaha, Neb. (William J. Hotz, Jr., Omaha, Neb., was with him on the brief), for appellants.

Harry Marselli, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, and George F. Lynch, Sp. Assts. to the Atty. Gen., and Donald R. Ross, U. S. Atty., Omaha, Neb., were on the brief), for appellees.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The appellants, hereinafter called the taxpayers, have appealed from final judgments of the District Court, memorandum opinion reported in 121 F.Supp. 690, dismissing their petitions for refund of cabaret taxes assessed pursuant to § 1700 (e) (1), Title 26, U.S.C. 1946 Edition,[1] and paid. These appeals which involve common questions of law were consolidated by stipulation.

Each taxpayer operated a dance hall. Admission fees were collected from all patrons entering the dance halls, and tax on such admissions was paid pursuant to 26 U.S.C., § 1700(a). Music for the dancers was furnished by a band. Tables, booths, and chairs were provided for the convenience of the dancers, and soft drinks, light refreshments, cigarettes,

---

1. § 1700 "(e) Tax on cabarets, roof gardens, etc.—(1) Rate.

"A tax equivalent to 5 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, carbaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. A performance shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance. No tax shall be applicable under subsection (a) (1) on account of an amount paid· with respect to which tax is imposed under this subsection."

and other incidentals, including beer at some of the places, could be purchased for the usual prices of such articles. The Commissioner assessed and collected a cabaret tax upon such merchandise sold for the period from September 1, 1948, to November 1, 1951. Claims for refund were filed. The conditions precedent prescribed by 26 U.S.C. § 3772, had been complied with. The trial court had jurisdiction. 28 U.S.C. § 1340.

This court in Birmingham v. Geer, 8 Cir., 185 F.2d 82, certiorari denied 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686, had occasion to consider the applicability of the cabaret tax under the identical statute here involved and upon a factual situation strikingly similar to the facts in our present cases. The District Court in Geer v. Birmingham, D.C.N.D.Iowa, 88 F.Supp. 189, in an excellent and exhaustive opinion, very fully reviewed the legislative history of § 1700(e) (1) and reached the conclusion that dance halls charging admission and paying admission tax were not liable for a cabaret tax on incidental refreshments sold. In reviewing the Geer case, this court followed the reasoning of Avalon Amusement Corp. v. United States, 7 Cir., 165 F.2d 653, and held that the dance hall operator was taxable under § 1700(e) (1) upon refreshments and incidentals sold to dancing patrons, although the prices of the items sold were not increased by reason of the entertainment furnished, and conceding that an admission tax had been paid on the gate admission collected. All questions pertaining to the applicability of the cabaret tax under circumstances such as are involved in these cases were carefully and fully considered by us in the Geer case, supra. Under the principle of stare decisis our decision in the Geer case fixes the rule to be followed in this circuit on the construction of § 1700(e) prior to the 1951 amendment thereto, unless there are cogent reasons

for holding that the former construction was erroneous.

The taxpayers contend that this court in the Geer case failed to consider the case of Wilmette Park District v. Campbell, 338 U.S. 411, 70 S.Ct. 195, 94 L.Ed. 205. The district court in the Geer case cited the Wilmette Park case, at page 215 of 88 F.Supp. Thus it would appear that this court was fully advised as to the Wilmette Park case at the time of its decision in the Geer case. The Wilmette Park case does not support the taxpayers' position as the applicability of the cabaret tax statute was in no way involved. The court's holding was that an admission charge to a municipal bathing beach was subject to tax under § 1700(a) (1). The taxpayers rely upon a footnote at page 415 of 338 U.S., 70 S.Ct. at page 197, which in reciting various tax restrictions states, "Section 1700(e) imposes a tax of 5 per cent on amounts paid for admission, refreshment, service, or merchandise, 'at any roof garden, cabaret, or other similar place furnishing a public performance for profit'; in such cases no tax may be imposed under § 1700(a)." It would appear that the court in the Wilmette Park case was by said statement only intending to refer to that part of § 1700(e) (1) which states, "No tax shall be applicable under subsection (a) (1) on account of an amount paid with respect to which tax is imposed under this subsection." There has been no attempt made in the cases we are now considering to impose a cabaret tax on the amount paid for admission at the gate. The tax on the gate admission was fully settled by payment of admission tax thereon. The taxpayers' liability for admission taxes is not involved in the present cases. We find nothing in the Wilmette Park decision which conflicts with our holding in the Geer case.

The taxpayers strenuously contend that section 404 of the Revenue Act of 1951,[2] 65 Stat. 452, is to be applied retro-

2. "Sec. 404. Tax on Cabarets, Roof Gardens, Etc.

"(a) *Ballrooms and dance halls.*— Section 1700(e) (1) (relating to tax on

cabarets, roof gardens, etc.) is hereby amended by inserting after the second sentence thereof the following new sentence: 'In no case shall such term in-

actively, that this amendment is a clarifying amendment and, as such, is to be considered as part of the original Act. Under the Act as amended there would be no cabaret tax due. The Commissioner recognizes that this is the effect of the amendment as to future transactions, as no cabaret taxes have been collected from dance halls such as those involved here for any period subsequent to November 1, 1951, which is the effective date of the amendment.

■■ The trial court held that since the 1951 amendment was passed to avoid the construction placed on § 1700(e) by the Geer case, it could not be considered as a declaration of existing law and that it was intended to and did effectuate a change. We agree with the trial court.

■ The question of whether a statute operates retroactively or prospectively only is one of legislative intent. Amendatory acts are ordinarily prospective in their operation and will be so construed unless a contrary legislative intent, either express or implied, is clearly shown. Courts have evolved a strict rule of construction against retroactive application of a statute. 82 C.J.S., Statutes, § 432, p. 1005; 50 Am.Juris. 494, Statutes, § 478; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Fullerton-Krueger Lumber Co. v. Northern Pacific R. Co., 266 U.S. 435, 45 S.Ct. 143, 69 L.Ed. 367; Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858; Mogis v. Lyman Richey Sand & Gravel Corp., 8 Cir., 189 F.2d 130. In 2 Sutherland, Statutory Construction (3rd Ed.), § 3004, at p. 225, it is stated:

"The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is prospective only." Both the House [3] and the Senate [4] Reports on the

---

clude any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a "roof garden, carbaret, or other similar place".'

"(b) *Effective date.*—The amendment made by subsection (a) shall be applicable only with respect to periods after 10 antemeridian on the first day of the first month which begins more than ten days after the date of the enactment of this Act."

3. H.Rep. No. 586, 82d Cong., 1st Sess., p. 126

"Sec. 404. Tax on Cabarets, roof gardens, etc.

"This section amends section 1700(e) (1) of the Internal Revenue Code to exempt from the cabaret tax bona fide dance halls, ballrooms, and other similar places where the serving or selling of food, refreshments, or merchandise is merely incidental to the music and dancing privileges furnished unless the conduct of the place is such as to bring it within the normal concept of a roof garden, cabaret, or similar place. This determination will be made by reference to the over-all operation of the establishment, including such factors as the relative income from the several activities over a period of time, the relative portion of space devoted to the various activities, the type of refreshments served or sold, the scope and character of the entertainment furnished, and the hours of operation.

"The purpose of this amendment is to make it clear that the principles set forth by the district court in the case of Geer v. Birmingham, D.C., 88 F.Supp. 189, are controlling in the determination of whether the establishment involved is operating as a cabaret or as a dance hall, and to avoid the broad construction placed upon the statute in the case of Avalon Amusement Corporation v. United States, 7 Cir., 165 F.2d 653, and in the court of appeals decision reversing the decision of the district court in the Geer case, Birmingham v. Geer, 8 Cir., 185 F.2d 82, which requires that dance halls and similar establishments be taxed as cabarets even though the serving or selling of food, refreshments, or merchandise is merely incidental.

"The amendment made by this section shall take effect at 10 a.m. on the 1st day of the first month which begins more than 10 days after the date of the enactment of this bill."

4. S.Rep. No. 781, Part 2, 82d Cong., 1st Sess., p. 69. The Senate Report is for all practical purposes the same as the House Report set out in footnote 3.

1951 amendment show that Congress was fully aware of the interpretation placed on cabaret taxes by the Avalon and the Geer cases, and that it was its desire to amend the statute to avoid the construction placed on the original statute by the courts. It seems clear that Congress knew that it was changing the former law as interpreted by the courts. There is nothing in the amendment or in its legislative history to warrant any inference that Congress intended the change to be retroactive. On the contrary subsection (b) of the amendment specifically provides that the amendment "shall be applicable only with respect to periods after [November 1, 1951] * * *." We have examined the cases cited by the taxpayers. The cases furnish no support for their contentions. In Jordan v. Roche, 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908, the court found that bay rum was taxable under the original statute. Subsequent to a circuit court decision holding otherwise, Congress amended the statute to make clear that bay rum was taxable. It was urged that this amendment constituted a declaration by Congress that bay rum was not subject to tax under the original statute. In rejecting this conclusion the Supreme Court said, 228 U.S. at page 446, 33 S.Ct. at page 576:

"* * * The law was not the declaration of a new policy, but a more explicit expression of the purpose of the prior law, made necessary by the judicial construction of that law."

In the Jordan case the Supreme Court disagreed with the prior circuit court decisions which induced the amendment. In the present cases the amendment was intended to change the law as interpreted by the Courts of Appeals of this Circuit and of the Seventh Circuit. There has been no Supreme Court determination that the interpretations made in the Geer and Avalon cases are erroneous. Consequently, in our present cases, the amendment changes rather than clarifies the prior statute.

■ Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407, relied upon by taxpayers, holds that the legislative history of an act should be examined. The court there found that the amendment was intended as a legislative reversal of the cases upon which the lower court relied. The legislative history in the Harrison case is similar to that in the present cases in that in both instances the legislative history showed a desire to change an existing interpretation of the law by the courts. The Harrison case is authority for the proposition that the legislative history in the present cases demonstrates an intention to change the law and bring about a legislative reversal. In the Harrison case the question of retroactivity was neither involved nor discussed as the death creating the tax liability occurred after the effective date of the amendment. Mogis v. Lyman Richey Sand & Gravel Corp., supra, supports the Government's position rather than that of the taxpayers. Retroactive application of the amendment was there denied by this court. We there said 189 F.2d at page 142:

"In appraising amendatory legislation we must also observe the rule that unless the contrary appears and is constitutionally permissible, it must be given only prospective effect and not be allowed to operate retrospectively. * * *"

None of the other cases cited by the taxpayers is inconsistent with the result we reach. We are convinced that the record fully supports the conclusion of the trial court that the general rule to the effect that an amendment operates only prospectively is applicable in these cases, and that the 1951 amendment, as stated in the amendment itself, is only effective as of November 1, 1951.

The taxpayers further contend that statutory law, either as it exists after an amendment or does not exist at all at the time a case is reached on appeal, is subject to the rule of decision that a change in law between the time of trial and the time reached on appeal requires the appellate court to apply the changed law. In support of their contention the tax-

payers cite Caldwell v. Carmar Trading Co., D.C.D.Hawaii, 116 F.Supp. 546, and Interstate Hotel Co. of Neb. v. Remick Music Corp., 8 Cir., 157 F.2d 744. The cited cases and the principle urged are not applicable to the facts in these cases. The cabaret tax law has not been repealed. By the terms of the amendment the additional exemption is applicable only to periods subsequent to November 1, 1951. The provisions of the original act assessing the tax here involved are fully effective as to transactions prior to November 1, 1951.

█ As a final contention taxpayers urge that the collection of the taxes involved in these cases violates the uniformity requirement of Article I, Section 8, Clause 1, of the Constitution of the United States, in that similar taxes were not collected uniformly. The taxpayers received letters in 1942 from the Commissioner to the effect that their operations were not subject to cabaret tax. After the Avalon decision, on January 28, 1948, the Collector of Internal Revenue for the District of Nebraska took up the situation of the taxpayers with the Commissioner, and was advised on the strength of the Avalon case to collect cabaret taxes from the taxpayers after notifying them of the change in ruling. Notice of this change was given the taxpayers about September 1, 1948, and cabaret taxes were collected thereafter. The collection of the cabaret tax was uniform in Nebraska. Much evidence was introduced that in many other States no effort was made to collect cabaret tax from dance hall operators until 1951. The trial court decision in the Geer case was on January 10, 1950, and our decision in that case was filed on November 10, 1950. On January 19, 1951, the Commissioner wrote all collectors to enforce the cabaret tax against dance hall operators. Such letter states in part:

"Subsequent to the decision in the Avalon case it was the position of the Bureau that any dance hall which sold food or refreshments is liable for the cabaret tax and rulings issued since that time have been to that effect. However, because of the fairly apparent indications that the decision in the Avalon case would be tested in further litigation, no action was taken by the office to publicize such position of the Bureau or to notify dance halls generally of their liability for the cabaret tax, except in response to specific requests for rulings. In view of the concurring circuit court decision in the Geer case, it is now believed advisable to publicize the Bureau's position on this matter."

Section 1700(e) applies by its terms to all States in the same manner, and hence complies with the requirement of geographical uniformity imposed by Article I, Section 8, Clause 1, of the Constitution of the United States. Brushaber v. Union Pac. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493; Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; LaBelle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998; Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759. The history of the adoption of this Constitutional provision is very exhaustively covered in Knowlton v. Moore, supra. The statute itself clearly complied with all Constitutional requirements. Under the record in these cases there was no intentional discrimination against the taxpayers. There was some lack of uniformity in enforcement prior to 1951, but this was due to uncertainty in the interpretation of the law. The trial court in its opinion states, 121 F.Supp. at page 695:

"In the cases under consideration the enforcement policy followed with respect to the taxpayers involved in the litigation is in keeping with the spirit and letter of the law. Insofar as these cases are concerned, neither the law nor its enforcement violates the Constitution."

A similar but not as exhaustive a record of lack of uniformity was made in the Geer case. We there said, 185 F.2d at page 86:

" * * * The government was not there and is not here estopped by any practices or rulings that may have been made to have judgment herein according to the statute

and the valid regulation interpretative of it."

None of the cases cited by the taxpayers supports their contention that the tax here assessed is unconstitutional.

The judgments of the District Court dismissing the petitions for refund of all the taxpayers are right, and they are affirmed.