**BIRMINGHAM v. GEER et ux.**

No. 14140.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1950.

Harry Marselli, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, and George R. Parsons, Sp. Assts. to Atty. Gen., Tobias E. Diamond, U. S. Atty., and William B. Danforth, Asst. U. S. Atty., Sioux City, Iowa, on the brief), for appellant.

Thomas B. Roberts, Des Moines, Iowa, and Christopher T. Boland, Washington, D. C. (Clyde B. Charlton, Louis A. Parker, Joseph Brody and Charles E. Harris, all of Des Moines, Iowa, on the brief), for appellees.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiffs, a partnership, have operated a ballroom in Fort Dodge, Iowa, since 1938, known as the Laramar Ballroom, and have always paid the federal excise tax based on their admission charges, under 26 U.S.C.A. § 1700(a) (1), but for business done by them on December 9, 1948, they were compelled to pay the cabaret tax in the amount of $44.90 under 26 U.S.C.A. § 1700(e) on the amounts paid by patrons for soft drinks, chewing gum, candy bars, ciga-

rettes and checkroom service. They brought this action against the Collector of Internal Revenue for refund of that amount on the ground that they were not subject to the cabaret tax and they recovered judgment against him as prayed. The opinion of the District court is reported in 88 F. Supp. 189. The Collector appeals.

A full description of all the operations carried on by the taxpayers at the Laramar Ballroom and of the place itself is set forth in the court's opinion, and the opinion also very completely describes the places that are known as cabarets and sets forth the points of difference between the layout and operations of places known as dance halls or ballrooms and places known as cabarets. The Collector does not claim on this appeal that the court erred in any of its findings describing the operations or the differences. He concedes that the Laramar Ballroom is not a cabaret within the generally understood meaning of that word. His contention is here, as it was in the District court, that Section 1700(e), as amended by Section 622 of the Revenue Act of 1942, required the imposition of the tax in question upon these taxpayers in respect to their operation of the Laramar Ballroom.

The provisions which he specifies and relies on read:

Section 1700. There shall be levied—

"(e) Tax on cabarets, roof gardens, etc.,—

"(1) Rate. A tax equivalent to 20 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any * * * hall, or other public place where music and dancing privileges * * * are afforded the patrons in connection with the serving or selling of * * * refreshment, or merchandise. A performance shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance. No tax shall be applicable under subsection (a) (1) on account of an amount paid with respect to which tax is imposed under this subsection.

"(2) By whom paid. The tax imposed under paragraph (1) shall be returned and paid by the person receiving such payments." 26 U.S.C.A. §§ 1650, 1700.

Treasury Regulations 43 (1941 ed.):

Sec. 101.14 [as amended by T.D. 5192, 1942–2 Cum.Bull. 249]. "Scope of Tax.— The term 'roof garden, cabaret, or other similar place' includes any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. A public performance furnished at a roof garden, cabaret, or other similar place shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance.

"Where music, whether by an orchestra, a mechanical device, or otherwise, and a space in which the patrons may dance is furnished in the dining room of a hotel, or in a restaurant, bar, etc., the entertainment constitutes a public performance for profit at a roof garden, cabaret, or similar place, and the payments made for admission, refreshment, service, and merchandise are subject to the tax.

\* \* \* \* \* \*

"Examples. (1) A proprietor of a dancing establishment provides for the serving of refreshments to his patrons. An admission or cover charge is made to each patron. In this case the admission or cover charges and also the charges for refreshment, service, and merchandise are subject to the tax. \* \* \*"

## Opinion.

In Avalon Amusement Corporation v. United States, 7 Cir., 165 F.2d 653, the taxpayer operated a dance hall and received

charges made for check room service in respect to which the Collector imposed cabaret tax under the statute here invoked. The taxpayer paid it and sued for refund. It appeared to the Court of Appeals for the Seventh Circuit that the "case presents two questions: whether the plaintiff-appellant's dance hall is a 'roof garden, cabaret, or other similar place furnishing a public performance for profit' within the meaning of Section 1700(e)(1) of the Internal Revenue Code [26 U.S.C.A.Int.Rev.Code § 1700 (e)(1)], and secondly, whether the checkroom service for which the plaintiff receives a charge is a service subject to the tax. Only the tax on the checkroom service is involved here."

In answer to the first of the questions, the court said:

"It seems clear to us that the plaintiff's dance hall comes within the definition of a 'roof garden, cabaret, or other similar place' as provided in the statute. The definition, to quote the statute, is as follows: 'The term "roof garden, cabaret, or other similar place" shall include any * * * hall * * * where music and dancing privileges * * * are afforded the patrons in connection with the serving or selling of * * * refreshment * * *.'

"The plaintiff argues that this definition applies to a situation in which a dancing privilege is a mere incident to the charge for food or refreshments. With this we are unable to agree. We can see no justification for so torturing the plain meaning of the phrase 'in connection with'—it does not connote that those things connected are also in relationship of primary and subsidiary. An establishment charging admission for dancing privileges and where refreshments are sold in connection therewith is a 'roof garden, cabaret, or other similar place.' The plaintiff's dance hall meets these specifications."

Answering the second question, the court said: "Was the operation of the dance hall under these circumstances 'a public performance for profit?' We think that it was. A hall in which music for dancing is furnished to any one of the public who is able and willing to pay the admission fee is an establishment furnishing 'a public performance for profit.' The fact that the public participates in the performance by dancing to the music furnished by the plaintiff does not make it any the less a performance; the performance is certainly open to the public, and the plaintiff operates the dance hall for profit. Apparently, one who pays his admission may sit around and watch the dancing without participating therein and be served refreshments. In any event, there is here a public performance for profit."

The court also attributed favorable consideration and weight to the Regulation and Example (1) above set forth.

▉ It is important that, so far as possible and particularly with respect to questions affecting the administration of taxing statutes, there should be uniformity of decision among the circuits. We would not be justified in refusing to follow the decision of the Circuit Court of Appeals in the Avalon case unless convinced that it was clearly wrong. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591; United States v. Kelley, 8 Cir., 110 F.2d 922, 924; Grain Belt Supply Co. v. Commissioner of Internal Revenue, 8 Cir., 109 F.2d 490, 492.

▉ The facts controlling decision in the Seventh Circuit are analogous to the facts here and this court must either declare itself in accord or announce decision in conflict. Despite vigorous arguments to the contrary, it appears as clear to this court as it did to the court in the Seventh Circuit "that the [taxpayer's] dance hall comes within the [statute's] definition of a '* * * hall * * * where music and dancing privileges * * * are afforded the patrons in connection with the serving or selling of * * * refreshment * * *.'" It appears to us as declared by that court that the phrase "in connection with" as it is used conveys its meaning plainly and does not connote that those things connected are in the relationship of primary and subsidiary. See and compare Birmingham v. Rucker's Breeding Farm, Inc., 8 Cir., 152 F.2d 837, 840-841.

In the Avalon case the taxpayer argued that the statutory definition applied to a

situation in which a dancing privilege is a mere incident to the charge for food or refreshments and the court directly answered that argument. Here the taxpayer in view of the Avalon case, puts it that the definition applies to a situation where the right of patrons to dance is conditioned upon the purchase of food or refreshments. But in the language of the Avalon case, there is the same torturing of the plain meaning of the phrase to sustain that contention as the other. "In connection with" does not connote that those things connected (dancing and refreshment) are also in the relationship of one being conditioned on the other.

As to the other question, whether the operation of the taxpayers' dance hall was a public performance for profit, the answer given in the Seventh Circuit also appeals to us as sound.

▮ The court declares that "A hall in which music for dancing is furnished to any one of the public who is able and willing to pay the admission fee is an establishment furnishing 'a public performance for profit.' The fact that the public participates in the performance by dancing to the music furnished by the plaintiff does not make it any the less a performance; the performance is certainly open to the public, and the plaintiff operates the dance hall for profit." We agree.

▮ The court recognized elements of ambiguity in the statute's definition of roof garden, cabaret, or other similar place and failure to define a "public performance" and that it was a proper subject for an interpretative regulation. It found the regulation to be in accord with the court's understanding of the statute and that it is valid. We agree.

It appeared to the trial court that "there are apparent important differences between the picture presented in the Avalon case and the picture presented in this case. In the present case a large amount of evidence was introduced as to the well known and well recognized meaning of the word 'cabaret' and the characteristics which distinguish 'cabarets' from 'ballrooms' of the type and kind operated by the plaintiffs.

In the Avalon case there is nothing to indicate that any such evidence was presented. In the Avalon case the legislative history as given in the government's brief went back to 1942. In the present case a full, complete legislative history of the statute in question since its original enactment in 1917 was presented. In the Avalon case the attention of the United States Court of Appeals for the Seventh Circuit was called to what was claimed to be the then-existing interpretation of the statute. The attention of that court was apparently not called to the fact that the administrative rulings and practice of the Treasury Department had for several years been contrary to the claimed interpretation."

We have not found in this record any sufficient reason to decline to recognize the decision in the Seventh Circuit as a precedent directly applicable to the facts in this case and entitled to great weight as such.

▮ We do not find that the court in deciding the case was insufficiently or wrongly advised as to the relation to decision of the interpretative regulation adopted by the Internal Revenue Bureau after the enactment of the statute which the court was called on to apply in the case before it. The court was called on to decide whether or not the regulation was in accord with the statute and applicable and it did decide. The government was not there and is not here estopped by any practices or rulings that may have been made to have judgment herein according to the statute and the valid regulation interpretative of it.

▮ We have not failed to give careful consideration to the volume of legislative history referred to by the trial court, but are not thereby persuaded that Congress meant or intended anything other by the 1942 amendment than what it said in laying the excise tax in respect to a hall or other public place furnishing a public performance for profit where music and dancing are afforded the patrons in connection with the serving or selling of refreshment or merchandise.

The arguments made to the contrary are to the effect that in enacting the amendment the legislative intent was centered on cabarets and on closing a loop hole in the tax on cabarets and no other intent should be inferred. Computations are presented showing that at the time of the 1941 amendment the government would have gotten less tax from appellees by applying the cabaret tax than under the admission tax of Section 1700(a) (1), though Congress notoriously wanted to raise more and not less revenue. It is said that if Congress had wanted to put the carbaret tax on ballrooms it would have named ballrooms in the amendment and especially it is stressed that it should be inferred from the history that Congress never intended to lay the carbaret tax on ballrooms.

The history relied on discloses that in laying the excise tax in respect to any roof garden or cabaret the tax statute always included "or other similar place", which shows conclusively that Congress always thought there were other similar places which ought to be taxed like cabarets. The 1942 amendment instead of redefining roof gardens or cabarets took the aggregate "roof garden, cabaret, or other similar place" and said it should include the place specifically defined and certainly there is nothing in that course indicating that legislative attention was confined to cabarets. The history clearly shows that Congress never treated dance halls or ballrooms as distinct subjects for excise tax and has never undertaken to define and classify them by name for such tax. On the contrary, they were consistently lumped together in the most general classification of unnamed "places" to which admission was charged and taxed merely as such places.

In view of that way Congress has always had of taxing dance halls without naming them, there is no significance favorable to the taxpayers here in the wording of the amendment which extends the definition of the places which were the subjects of the cabaret tax. The history negates an inference that because the dance halls were not named in the amendment therefore they were not intended to be taxed thereunder, and it also refutes the argument that because Congress did not call them by name or dwell upon the differences which distinguish them from cabarets therefore Congress did not intend to tax them. Nor is there any conclusiveness about the computation showing the cabaret tax in 1941 figured out less than the admission tax would have done. Applying the cabaret tax to the dance hall and its gross receipts from admissions, soft drinks, chewing gum, candy bars, cigarettes and checkroom services broadens the base of taxation and its imposition compelled disclosure of the business done. Congress may have found those considerations more important than the amount of the first year's tax.

The argument is made as a reductio ad absurdum that if the tax in question is applied to dance halls it may "by the same token" be extended to other businesses which ought not to be so taxed. Research and study of counsel suggests the following: circus and carnival tents, field houses, sports arenas, indoor swimming pools, auditoriums, coliseums, concert halls and theaters. The argument has not been found helpful to decision here. Each amendment of the taxing statute gives rise to problems that must be worked out as they are presented and this amendment as interpreted by the applicable regulation and the decision of the court in the Seventh Circuit suggests no more problems to be anticipated than are inevitably incident to such tax legislation. There is no absurdity in the interpretation that has been authoritatively pronounced in the Seventh Circuit.

Though each point of dissimilarity between dance halls and cabarets has been noted, the points of similarity are more conspicuous. Both provide dancing facilities for and sell refreshment to their patrons. Whereas one caters to lavish spenders and makes the dancing privilege a mere incident to the charge for refreshment, the patrons of the other pay directly for the dancing privilege and incidentally spend frugally for refreshment. The busi-

ness of both is to provide public performances with dancing.

As we find the judgment erroneous it is reversed and remanded with direction to dismiss the complaint at plaintiffs' costs.