Norman KANTOR, David Tobin and B. L. Weinstein, dba Theatre Lounge, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Norman KANTOR and B. L. Weinstein, dba Theatre Lounge, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 6384, 6385.

United States District Court N. D. Texas, Dallas Division.

Sept. 11, 1956.

Weinberg, Sandoluski & Ginsberg, by R. M. Ginsberg, Dallas, Tex., for plaintiffs.

Heard L. Floore, U. S. Atty., Ft. Worth, Tex., by John Ford, Asst. U. S. Atty., for defendants.

DAVIDSON, Chief Judge.

The plaintiffs sued to recover a portion of certain excise tax collected from them by the government in the operation of the Theatre Lounge, a place of entertainment where refreshments were served, operated within the City of Dallas, Texas. The show consisted of more that one performance ordinarily each day, admissions were charged and in addition thereto refreshments were sold. The show consisted of comic expressions, ballet dancers and strip tease performances, refreshments being served the guests at tables provided from which they could observe the show.

There is a certain tax collected for admission at the door which does not include the price paid for refreshments.

Plaintiffs admit liability for the tax charged for admission but seek to recover the tax collected upon refreshments sold within the theatre during the performances.

The defendant, the United States Government, insists that the plaintiffs were operating a cabaret or place of entertainment of like character and were due to pay the tax collected of plaintiffs.

The law has been subject to a number of amendments and interpretations. In its more original state we find it under Title 26 U.S.C.A. (I.R.C.1939) § 1700.

"There shall be levied, assessed, collected, and paid—

"(a) * * * A tax of 1 cent for each 10 cents or major fraction thereof of the amount paid for admission * * *".

This section was later amended and extended in more definite terms and the tax fixed at 20 per cent. It now appears as § 4231(6) of the Internal Revenue Code, 1954, in its revised and amended form as follows:

"Cabarets.—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit * * *".

" § 4232. Definitions

"(a) Admission.—The term 'admission' as used in this chapter includes seats and tables, reserved or otherwise, and other similar accommodations, and the charges made therefor.

"(b) Roof garden, cabaret or other similar place.—The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental * * *".

"Treasury Regulations 43 (1941 ed.):

"Sec. 101.14 (as amended by TD 5192, 1942–2 Cum.Bull. 249). *Scope of Tax*—The term 'roof garden, cabaret, or other similar place' includes any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. A public performance furnished at a roof garden, cabaret, or other similar place shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance."

Among the earlier cases on this subject is that of United States v. Broad-

moor Hotel Co., D.C., 30 F.2d 440. In this case a hotel served an afternoon tea at a charge of 75 cents and on certain days an orchestra was supplied for dancing during the tea period, there being no additional charge made to the 75 cents, a large percentage of those dancing not being guests at the hotel and not ordering tea or food nor paying for dancing. It was held in this case that the hotel was not subject to the tax, Judge Symes holding among other things that tax statutes must be construed strictly against the government.

The law has been amended several times since the foregoing decision. A very interesting and exhaustive discussion embracing more than forty pages of printed matter is given by District Judge Henry N. Graven in the case of Geer v. Birmingham, D.C., 88 F.Supp. 189, and notwithstanding the amendments, the holding in this case was that the plaintiffs were not subject to the tax.

The Seventh Circuit had in January 1948 in the case of Avalon Amusement Corporation v. United States, 165 F.2d 653, construed the statute in favor of the government and against the taxpayer. In November 1950 the Birmingham-Geer case tried by District Judge Henry N. Graven was presented to the Circuit Court of the Eighth Circuit and the decision of Judge Graven was overruled and decision rendered in favor of the government. 185 F.2d 82. Then this section was again brought before Congress and the Senate and House committees expressed themselves in favor of the legal interpretation given by Judge Henry N. Graven as being what Congress had intended to be the law, these expressions being given in the committee reports when the amended act was presented. The amended act is now before us and is above quoted under the head of excise tax with the subhead of admission as found in Para. 4231(6) and Para. 4232 (a) and (b), Internal Revenue Code, 1954.

It is insisted by the plaintiffs that this amended act by Congress was designed to relieve them of the payment of the tax which they here seek to recover. They direct the Court's attention to that proviso at the conclusion of Para. 4232 (b) which reads:

"* * * In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental * * *".

In amending and changing and interpreting this act it is easy to see the Treasury's problem in collecting it. If the tax is by law based on admission only, the operator of the cabaret or place of entertainment can make a cover charge to take care of the admission that might have been collected at the gate. He can sell refreshments at a price far in advance of those charged at the ordinary or average place of sale. Therefore in the act set forth in the latest amendment it is made to read:

"A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit * * *"

■ The tax is therefore made to include not only what might have been admission but refreshment and other merchandise sold on the occasion. Even the charge for hat checks is ordinarily included.

The term "incidental" as contained in the last statute and also in the Treasury Regulations must now be fully considered. Does the term mean something in amount of little or no consequence? In such event, if the facts should so show then plaintiffs would be without the pale of the law and not subject to that part of the tax now in controversy. If, however, the tax collected from the refreshments is substantial in quantity, then can it be said to be only incidental?

The following is an exhibit in this case.

| Date | Total Tax Paid | Additional Tax Assessed & Paid | Tax on Concession Sales | Tax on Cigarette Sales | Tax on Check Room | Tax on Admissions |
|---|---|---|---|---|---|---|
| **1950** | | | | | | |
| August | $1854.67 | | $981.92 | $ 36.30 | $ 18.66 | $817.79 |
| Sept. | 1,538.67 | | 655.28 | 12.26 | 15.78 | 855.25 |
| October | 1,320.90 | | 523.68 | | 7.64 | 689.58 |
| November | 979.45 | | 376.57 | | 18.96 | 583.92 |
| December | 879.07 | | 305.57 | | 22.85 | 550.65 |
| **1951** | | | | | | |
| January | 824.83 | | 315.39 | | 17.44 | 492.00 |
| February | 655.99 | | 236.16 | | 16.46 | 403.37 |
| March | 642.44 | | 222.44 | | 6.13 | 413.87 |
| April | 565.74 | | 172.40 | | 6.27 | 387.07 |
| May | 433.78 | | 129.10 | | .71 | 303.97 |

The receipts from the sale of concessions or refreshments are substantial in amount. For some months they are practically as large as the gate receipts. Upon a whole they approximate 40 per cent of the gross revenue. Should this income of this proportion be covered as something incidental only to the operation of the show? The thought suggests itself naturally that if the operator of such place of entertainment in order to make his enterprise profitable charged

$1 for admission and $1 for plate or cover charge, the revenue would be exactly equal. Who could say which would be incidental to the other?

From the time of Alexander Hamilton, the first Secretary of the Treasury, various revenue acts have either been written or largely influenced by the Treasury Department. This is not unnatural because this department knows the monetary needs of the government. And in drafting a measure of this kind it would naturally not only include the cabaret but other places of like character. The wording of the statute would not only include the admission at the gate but the profits from the sale of refreshments or cover charges.

The word "incidental" is defined in the dictionary as:

"1. Happening as a chance or undesigned feature of something else; casual; hence, not of prime concern; subordinate; collateral; as an *incidental* conversation; *incidental* expenses.

"2. Liable to happen or to follow as a chance feature or incident; as, the trials *incidental* to married life; the excesses *incidental* to capture by storming.

"3. Met by chance; chance; as, an *incidental* acquaintance.

"Syn.—Casual, fortuitous, chance, contingent; accessory, collateral, secondary."

A further definition from 42 C.J.S. p. 520 is given as follows:

"Incidental. An adjective which has reference to something which is subordinate to, and dependent on, and follows the existence of another and principal thing, * * * incident to the main purpose of the main business; * * *".

It is not believed that Congress intended by the provisions of the last amended act to limit the tax merely to admissions when other sources of revenue incident to the operation of the show might be as great or greater, but that incidentals referred only to some minor matter from which the collections must have been small or insignificant.

It is conceded by the parties that recovery of the first year of taxes is barred by limitation, but in view of our holding this becomes immaterial.

Judgment will be rendered for the defendant.