**Marty W. LANDAU, doing business as Riverside Rancho, Appellant,**

v.

**Robert A. RIDDELL, Individually and as District Director of Internal Revenue for Sixth District of California, Appellee.**

No. 15696.

United States Court of Appeals
Ninth Circuit.

April 28, 1958.

Clinton F. Seccombe, Los Angeles, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Thomas N. Chambers, Lee A. Jackson, A. F. Prescott, John J. Pajak, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, John G. Messer, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is a case involving the applicability of the Federal "Admissions and Dues Tax" to a particular business establishment, although it involves neither admissions nor dues.

Congress, soon after World War I started, found that its intent to tax all places where admission was charged, "such as motion picture shows, theatres, circuses, entertainments, cabarets, ball games, athletic games, etc.," was being defeated by a combination of free admissions and increased prices charged for service or food or drink inside cabarets, roof gardens, "or other similar places." (Report of House Finance

Committee on Revenue, October, 1917.) It therefore imposed a tax on such portion of the charges made by "such places" which could fairly be attributable to an admission charge, regardless of the form in which the charge was made. Presently, this "Admissions Tax" is imposed under the terms of the Internal Revenue Code of 1954, § 4231(6) and § 4232(b), 26 U.S.C.A. §§ 4231(6), 4232 (b). Both of these sections were taken intact from the Revenue Code of 1939, 26 U.S.C. § 1700(e), as amended. 26 U.S.C. § 1700(e) (1) provided in part, prior to its 1951 amendment:

> "A tax equivalent to 5 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise." 56 Stat. 981.

A third sentence in § 1700(e) (1) was inserted by the Act of October 20, 1951 (65 Stat. 521, § 404(a), made effective as of 10:00 a. m. on November 1, 1951 by § 404(b), 26 U.S.C.A. § 1700 note), reading as follows:

> "In no case shall such term include any ballroom, dance hall, or other similar place where the serv-

ing or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place' * * * * "

The government understands this to mean that *after* November 1951, the merely incidental serving or selling of food, refreshment, or merchandise does not *in itself* create a "roof garden, cabaret, or other similar place" subject to the Act, but that prior thereto *any* such serving or selling was sufficient. Taxpayer urges (a) that his sale of food, liquor and service was "merely incidental" to his ballroom; (b) that his "ballroom" was not a "cabaret"; and (c) that the effective date of the amendment of the Revenue Act of 1951 is not controlling because it was merely an enactment by Congress of an original continuing intent to exempt the merely incidental selling of food or services from the tax.

The sole question here is whether appellant in his operations hereinafter described was subject to what all parties and the court below called "cabaret taxes" on sales of his food, liquor and hat-check services.

Appellant had paid to the government the 20% admission tax required by Internal Revenue Code of 1954, § 4231(6) (formerly 26 U.S.C. § 1700(e)(1)) on all admissions to the premises which he operated. No tax on admissions is here involved.

Appellant operated at all times in question an establishment known as "Riverside Rancho," located at 3213 Riverside Drive, Los Angeles, California,[1] constituting roughly one acre in area with two major buildings on it.[2]

---

[1] A Stipulation of Facts was introduced as Plaintiff's Exhibit 1. While oral testimony was produced on behalf of plaintiff, its content seems immaterial on this appeal, save as to the issue of estoppel, or its sought equivalent, on the part of the government, or as to the issue of appellant's good faith, which was not questioned by the government.

[2] "Riverside Rancho" had a frontage of approximately 170 feet on Riverside Drive, and a depth varying between approximately 100 and 125 feet with a 7 foot fence enclosing the whole area. Entry was made through a "box office" or "main entrance" (Ex. 1) or "ticket office" (Ex. B). Directly inside the entrance was an open air patio and three

Between December 1, 1949 and November 1, 1951, appellant paid under protest as "cabaret taxes" $19,590.93. He filed a written claim for a refund of such taxes on January 25, 1954, and on March 15, 1956, the government rejected such claim. Appellant thereafter filed suit for such taxes. Appellee, the United States, answered and filed a complaint in intervention for $4,450.00 allegedly due and unpaid for excise taxes incurred between October 1, 1950 and September 30, 1953 after crediting appellant with $880.49 previously paid upon such alleged obligation.

Trial was had before the court below without a jury and resulted in a judgment for the government. The trial judge found (a) that appellant had not sustained "his burden of proving that his establishment was not subject to said cabaret tax during the period herein involved" (Finding VIII), and (b) that the government had sustained its burden of proof on its complaint in intervention for the additional cabaret tax (Finding X). A timely appeal was taken here. 28 U.S.C. § 1291.

Appellant insists that the first question to be answered is whether his ballroom was a "cabaret." That is an oversimplification of the matter. The first question is whether his "ballroom" (meaning the entire establishment to which admission was charged) was a "roof garden, cabaret, or other similar place." The second question, as we understand appellant's position, is whether the Commissioner of Internal Revenue (hereinafter Commissioner) is estopped

separate buildings; a 9 foot by 24 foot milk bar slightly to the south; a two story building further south, 17 feet by 50 feet, combining a dining room and kitchen; and east of the patio, milk bar and dining room, was the largest building containing a 65 foot by 90 foot ballroom, a 15 foot by 30 foot checkroom, and an adjoining room about 20 feet by 65 feet containing a central double bar, 30 stools and 8 benches. The opening between the ballroom and the bar was 5 feet wide and "never closed by order of the City of Los Angeles Fire Department." Food was served in the dining room and there was a bar there serving and selling liquor and beer. Liquor and beer were sold and served in the bar adjoining the ballroom. Hot dogs, coffee and soda pop were sold and served at the milk bar.

Patrons were permitted to pass freely between the dance area, the bar, the dining room and the patio. No refreshments were allowed to be taken into the dance area and guards were stationed to enforce this regulation at each entrance. The ballroom and bar were operated only from 8:00 or 9:00 p.m. to 12:00 midnight or 1:30 a.m., while the dining room operated from 6:30 p.m. on. From 6:30 p.m. until 8:00 p.m. a separate entrance on Riverside Drive was used to enter the restaurant. After 8:00 p.m. or 9:00 p.m. this entrance was closed and anyone wishing to go to the dining room had to pay an admission fee and enter by the main entrance. There were no free "pass outs."

There were benches along the wall of ballroom, but no tables or chairs therein. A western dance orchestra supplied music in the ballroom. "Except for said orchestra, no dinner dance music, floor shows, or other entertainment was furnished."

Paragraphs XIII and XIV of the Stipulation raise some interesting but confusing questions—not here controlling. Cf. Hover v. United States, S.D. Cal.1958, 158 F.Supp. 179. These paragraphs, en toto, are as follows:

"XIII.

"It was not possible for the customers in the dining room, while in the dining room, to see or hear the music being played by the orchestra since the building housing the orchestra and the building housing the dining room were separated by approximately 100 feet as stated above. There was no dancing in the dining room, but a bar was located therein.

"XIV.

"The patrons in the liquor bar could not see the orchestra while said patrons remained in said liquor bar area. Although the music being played by the orchestra in the dance area did drift through the 5 foot opening in the partition between the dance area and the liquor bar area, the patrons in the liquor bar area were not able to hear intelligible strains of music being played by the orchestra. There was no dancing allowed in the liquor bar area. The statements in this paragraph apply to the milk bar also, i.e., music could be heard but it was unintelligible, and no dancing was allowed in the milk bar area."

from changing his interpretation of the law passed by the Congress which created the tax liability. The third: whether it was necessary for the Commissioner to publish in the Cumulative Bulletin issued by him any change in instructions to his Deputy Collectors to make them binding on taxpayers; and fourth: whether the trial court applied the correct law to the facts of this case.

■ We hold the trial court properly found that the taxpayer had not sustained the burden of proof placed upon him which would enable him to escape liability. We answer the second and third questions in the negative on the ground the Commissioner cannot be estopped where his change of position corrects a mistake of law. (Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed. 2d 746,[3]) and we approve the legal conclusions reached by the trial court, as hereinafter appears.

Appellant bases his suit for refund (covering tax payments made by him under protest up to the November 1, 1951 addition of the "merely incidental" clause in the Act) on the ground that the government had recognized the validity of the interpretation of the Act he urges here by issuing various rulings to the effect that establishments similar to his establishments were not cabarets. This was during the period from 1941 through March 1947. In approximately March of 1947, the Commissioner is charged with changing his interpretation of what constituted a "cabaret" and with seeking to collect a "cabaret tax" on all ballrooms and dance halls where food or refreshments were served.

This brought about various court reviews of the Commissioner's actions. One of the first was contested by the Avalon Amusement Corporation. Avalon Amusement Corp. v. United States, W.D. Wis., 1947, 73 F.Supp. 328.[4] Appellant disagrees with the result reached in this decision, regretting that the full history of the Admissions Tax Act and the Commissioner's change of position was not before that court.

On appeal Avalon Amusement Corporation argued that the statutory definition "applies to a situation in which a dancing privilege is a mere incident to the charge for food or refreshments." The court in affirming said: "With this we are unable to agree. * * * [The phrase] 'in connection with' * * * [as used in the Act] does not connote that those things connected are also in the relationship of primary and subsidiary." [5]

In the next important case, Geer v. Birmingham, N.D.Iowa, 1950, 88 F. Supp. 189, the issue was the refund of "ballroom receipts" for one day, December 9, 1948.[6] But other refunds were indirectly involved. The case was carefully tried, much evidence was introduced, and District Judge Graven wrote what was later described as an "excellent and exhaustive opinion." [7] He examined the legislative history and the ad-

3. Cf. Higgins v. Commissioner, 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783.

4. The Avalon Ballroom, 90 feet by 63 feet, also had a stage for an orchestra, a checkroom, booths seating 88 people, plus extra tables, and a barroom "adjacent to and connected with the dance floor but * * * not an integral part of it." No food was sold. An admission was charged. Held: a "cabaret" within 26 U.S.C. § 1700(e).

5. 7 Cir., 1948, 165 F.2d 653, 654.

6. The Laramar Ballroom consisted of (a) a ballroom 58 feet by 100 feet; a lounge seating 43 people; a box office; a sec- ond floor balcony containing 38 booths seating 152 people; and a basement with checkroom, fountain, rest rooms, and three wooden benches seating 15 people; and, (b) an adjacent building connected by two entrances with the dance hall containing a fountain counter and 35 booths seating 140 people; total seating capacity 350; dance floor capacity 2000. No entertainment apart from dance music. Usual retail prices were charged for cigarettes, soft drinks, peanuts, popcorn, candy and gum. No meals or sandwiches were served.

7. So characterized in Peony Park, Inc., v. O'Malley, infra, note 8 at page 670.

ministrative background, including lengthy quotations from government regulations, and correspondence between the Commissioner and his Collectors. He commented on the inapplicability of the doctrine of estoppel against the Collector as a representative of the United States, on the rule of Congressional acquiescence, and the rules of statutory construction, *ejusdem generis*, and *noscitur a sociis*. He finally concluded that the Geers operated a ballroom and not a cabaret or roof garden, and hence that the tax was not due. Appellant here has re-argued many of the facts and even the exhibits of the Geer case, as well as the legal principles involved therein, and cited other district court cases which on their facts held the establishment was not taxable. The difficulty with appellant's position here is (a) the case of Geer v. Birmingham, supra, was reversed by the Court of Appeals in Birmingham v. Geer, 8 Cir., 1950, 185 F.2d 82, and (b) we are here dealing with a case on appeal wherein the controlling issues of fact have been decided adversely to appellant by the District Court.

The Eighth Circuit reversed the Geer case, first, because on the facts it was similar to the Avalon case, and "uniformity of decision" on similar facts should be preserved among the Circuits unless the decision "is clearly wrong"; and second, because

> "Despite vigorous arguments to the contrary, it appears as clear to this court as it did to the court in the Seventh Circuit 'that the [taxpayer's] dance hall comes within the [statute's] definition of a " * * * hall * * * where music and dancing privileges * * * are afforded the patrons in connection with the serving or selling of * * * refreshments." ' * * *

> "In the Avalon case the taxpayer argued that the statutory definition applied to a situation in which a dancing privilege is a mere incident to the charge for food or refresh-

ment * * * Here the taxpayer * * * [says] the definition applies to a situation where the right of patrons to dance is conditioned upon purchase of food or refreshments. * * * There is the same torturing of the plain meaning of the phrase to sustain that contention as the other." Id., at pages 85, 86.

The Eighth Circuit then found the Seventh Circuit was *not* "insufficiently or wrongly advised" with respect to interpretive regulation or legislative history; commented on the meaning and significance in the statute of the words "or other similar place" as alternative to, or additional to, the words "roof garden" and "cabaret"; found that Congress "never treated dance halls or ballrooms as distinct subjects for excise tax and has never undertaken to define and classify them by name," but has "consistently lumped [them] together in the most general classification of unnamed 'places' to which admission was charged and taxed * * * *", and reversed the judgment.

After these cases, and as a result of them, and after hearings on the subject mentioned these cases by name, the 81st Congress recommended, and a subsequent Congress passed, an additional and third sentence to § 1700(e) (1), reading:

> "In no case shall such term [roof garden, cabaret, or other similar place] include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is *merely incidental* * * *" [Emphasis added.]

The evidence in this case indicates (Defendant's and Appellee's Exhibit A) that from December 1949 to November 1, 1951 the Admissions income to appellant's establishment was .5144% of total receipts; that food and beverage income was .4711% of total receipts and that food, beverage and check-

room income was .4856% of total receipts. Can we say that as a matter of law almost 50% of the income from a business operation is "merely incidental"? The mere asking of the question indicates that the answer must be "no," and demonstrates that under the "merely incidental" interpretation the facts of this case prevent any recovery by appellant, both as a matter of fact and as a matter of law.

 If we assume, therefore, that appellant's view is correct—that he did not below and does not now ask the Court to give retroactive effect to the change in language in Section 1700(e) (1)[8]—but only asks the Court to hold that the amendment, though effective specifically by its terms as of 10:00 a. m. on November 1, 1951, was in reality merely declaratory of existing law (Jordan v. Roche, 1912, 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908; Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228), this still would not entitle taxpayer to recover, because of the factual evidence noted in the above paragraph, strongly overcoming the "merely incidental" argument, and because even more fundamentally, the lower court impliedly found that appellant's establishment was "similar" to a cabaret or roof garden. Both the rejection of the "merely incidental" argument and the finding of similarity, or either of them, is supported by the record, and would be dispositive of this case adversely to appellant.

We cannot hold clearly erroneous the District Court's finding that the taxpayer had failed to sustain his burden of proof that he was entitled to a refund from the government (Finding VIII), or the finding that the government had established its burden of proof that additional sums were due (Finding X).

Affirmed.

---

8. Appellant must take this position in view of Peony Park, Inc., v. O'Malley, 8 Cir., 1955, 223 F.2d 668, 671, and its eight companion cases.