**Fred J. BILLEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6174.**

United States Court of Appeals
Tenth Circuit.

Jan. 5, 1960.

John E. Marshall, Oklahoma City, Okl., for appellant.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., and Paul W. Cress, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., of counsel, were with her on the brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.

BREITENSTEIN, Circuit Judge.

The issue is the liability of appellant Billen for the federal cabaret tax because of his operation of an establishment known as the Corn Crib at Oklahoma City. Billen paid the tax for the years involved and then sued to recover the

amounts so paid. He appeals from an adverse judgment.[1]

Billen has operated the Corn Crib since 1948. A sign on the building read "Corn Crib Dancing." The establishment was open to the public six nights a week from 8:30 P.M. to 4:00 A.M. An admission charge of 50 cents per person was made but no stags were allowed. Payment of the admission charge entitled the patron to the use of the dance floor and other facilities.

The building has an area of approximately 3,182 square feet of which 1,752 square feet were devoted to dancing space and 1,302 square feet to booths, griddle and counter space. The dancing area would accommodate about 500 dancers. No partitions separated the dance floor from the portions of the building used for seating and eating. There were 35 booths with seating capacity for 158 patrons. An additional 40 persons could be seated at tables. Juke box music was provided at the expense of the customers. No beer or whiskey was sold in the establishment but at times such liquors were brought in. Setups were provided. Cigarettes were dispensed by a vending machine. Hamburgers, cheeseburgers, coffee, soft drinks, potato chips, ice and lemons were sold at prices comparable to those charged at other outlets in the area. Knives, forks and table linen were not supplied. The cooking facilities consisted of a gas griddle, 18 x 24 inches in size, and a 2-plate electric appliance to make coffee. One man was employed to fill orders and only one waitress was employed four nights of the week. On Friday and Saturday nights two waitresses were employed. The average expenditure per person was approximately $1.00. Approximately one-half of the gross receipts were from the sale of food, setups, and soft drinks. No entertainers were employed and there was no live music. During the period involved, August 1952 to June 1956, Billen paid $9,308.54 in cabaret taxes.

Section 1700(e) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1700(e) (1), imposed a 20 per cent tax on all amounts paid for admission, refreshment, service, or merchandise at "any roof garden, cabaret, or other similar place," and provided:

"The term 'roof garden, cabaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise."

In Avalon Amusement Corporation v. United States, 7 Cir., 165 F.2d 653, 654, it was held that "an establishment charging admission for dancing privileges and where refreshments are sold in connection therewith" is a roof garden, cabaret, or other similar place. In Geer v. Birmingham, D.C.N.D.Iowa, 88 F.Supp. 189, the decision was that a ballroom which made a small admission charge and which had a fountain which sold tobacco, soft drinks and confections at normal retail prices, but served no meals, was not subject to the cabaret tax. This decision was reversed by the Court of Appeals for the Eighth Circuit[2] on the authority of the Avalon case, the court saying that the facts in the two cases were analogous and that in the administration of taxing statutes there should be a uniformity of decision among the circuits.

Section 404 of the Revenue Act of 1951[3] amended § 1700(e) (1) by adding, after the portion thereof quoted above, the following:

"In no case shall such term include any ballroom, dance hall, or

---

1. The United States received judgment on a counterclaim which was based upon underpayments because of errors in the computation of the tax. No attack is made

thereon except the denial of liability for the tax.

2. Birmingham v. Geer, 8 Cir., 185 F.2d 82.

3. 65 Stat. 452.

other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place.' "

The purpose of this amendment was thus stated in the House Report on the Revenue Act of 1951: [4]

"The purpose of this amendment is to make it clear that the principles set forth by the district court in the case of Geer v. Birmingham (88 F. Supp. 189) are controlling in the determination of whether the establishment involved is operating as a *carbaret* or as a dance hall, and to avoid the broad construction placed upon the statute in the case of Avalon Amusement Corporation v. United States [7 Cir.,] (165 F.2d 653) and in the court of appeals decision reversing the decision of the district court in the Geer case (Birmingham v. Geer, [8 Cir.,] 185 F.2d 82), which require that dance halls and similar establishments be taxed as cabarets, even though the serving or selling of food, refreshments, or merchandise is merely incidental."

The provisions of §§ 4231(6) and 4232 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4231(6), 4232, applicable to the portion of the taxes paid after January 1, 1955, are substantially similar to § 1700(e) (1) of the 1939 Code as amended by the 1951 act.[5]

Billen contends that the legislative history of the 1951 amendment establishes that Congress intended that the tests set out in the district court decision in Geer v. Birmingham [6] apply to determine liability for the tax and that the application of those tests to his operation discloses that he was operating a ballroom to which the tax did not apply. Specifically, he relies on the exaction of an admission charge, the relative size of the areas devoted to dancing and other purposes, the absence of a bar and entertainers, the use of mechanical music, the limited and unadvertised facilities for furnishing food, the reasonable prices charged for food, and the claim of a financial loss on the service of food.

Three district court decisions involving the statute as amended in 1951 hold that the term "incidental" refers to the source of income but each of those cases is factually different from that under consideration.[7] Landau v. Riddell, 9 Cir., 255 F.2d 252, was a case involving liability for the cabaret tax before the 1951 amendment. The argument was urged that the 1951 amendment was declaratory of existing law. The record showed that over 51% of total receipts came from admissions and over 48% from food, beverage and checkroom income. The court held that accepting the 1951 amendment as declaratory of existing law the taxpayer could not prevail as the trial

---

4. House Report No. 586, 82d Congress, 1st sess., 2 U.S. Cong. News '51, p. 1915. The Senate Report was to the same effect. See U.S. Cong. News '51, supra, p. 2089.

5. The law was amended again in 1958. 72 Stat. 1287. The amendment provides that the term "roof garden, cabaret, or other similar place" does not include any place "if—(1) no beverage subject to tax under chapter 51 (distilled spirits, wines, and beer) is served or permitted to be consumed; (2) only light refreshment is served; (3) where space is provided for dancing, no charge is made for dancing; and (4) where music is provided or permitted, such music is (A) instrumental or other music which is supplied without any charge to the owner, lessee, or operator of

such place (or to any concessionaire), or (B) mechanical music."

6. See 88 F.Supp. 194–195.

7. In re Duffin, D.C.S.D.Cal., 141 F.Supp. 869, involved an establishment with a bar, no admission charge, and revenue derived solely from food and refreshments. In Kantor v. United States, D.C.N.D. Tex., 154 F.Supp. 58, the place involved charged an admission, provided a variety of entertainment, and received 40% of its gross revenue from concessions and refreshment. Jones v. Fox, D.C.Md., 162 F. Supp. 449, concerned an establishment in which there was no admission charge and revenue was derived solely from food and refreshment.

court had found that the food service was not "merely incidental" and that the establishment was "similar" to a cabaret or roof garden. The court of appeals said that the taxpayer had not sustained the burden of proving that he was entitled to a refund of the tax paid.

The Corn Crib was a place where dancing privileges were afforded patrons in connection with the service of food. It came within the literal terms of the statute prior to the 1951 amendment. That amendment exempted from the definition of "roof garden, cabaret, or other similar place" an establishment where the service of food was "merely incidental" unless it otherwise would be considered within the taxed category. The question is whether in the operation of the Corn Crib the service of food was merely incidental.

No rigid formula may be applied for the determination of this question. Each case must stand on its own facts. Here the record shows that 50% of the gross revenue came from the sale of food, set-ups and soft drinks. The derivation of a profit or loss from such sales cannot be determinative. There is no evidence as to whether the public was primarily attracted by the dancing privileges or the food service. It is a reasonable inference that without one there could not have been the other and that they were mutually dependent. Billen testified that the approximate expenditure of each patron was $1.00 of which 50 cents was the admission fee.

Taking into consideration all the facts urged by Billen as proof that the Corn Crib was not subject to the tax, the fact remains that both the dancing and food services were important to the customers. In such circumstances it may not be said that one was "merely incidental" to the other.

■■ The trial court found that the food service was not incidental.[8] We cannot say that such finding was clearly erroneous. Considered as a matter of law the service and sale of food and refresh-

ments in the circumstances of this case were not incidental within the meaning of that word as intended by Congress in the 1951 amendment.

Affirmed.

8. The decision of the lower court is reported in D.C., 174 F.Supp. 41.