**Ruperto ROBERTO t/a Caborrojeno Caterers, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 530, Docket 73–1975.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1975.

Decided June 27, 1975.

Leonard Bailin, P. C., New York City, for plaintiff-appellant.

Richard Weisberg, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., V. Pamela Davis, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before FRIENDLY and MANSFIELD, Circuit Judges, and BARTELS,* District Judge.

PER CURIAM:

Ruperto Roberto appeals from a judgment of the United States District Court for the Southern District of New York after a non-jury trial before Judge Richard H. Levet, dismissing his complaint for a refund of $250 in cabaret taxes and granting the Government's counterclaim in the amount of $164,741.77 for cabaret taxes assessed by the District Director of Internal Revenue for the period from July 1, 1958 through December 31, 1961, plus $74,852.24 interest, totalling $239,344.11.

The issue presented is whether the appellant conducting a dance hall under the trade name of Caborrojeno Caterers at 3534 Broadway, New York, N.Y., was liable for cabaret taxes imposed by 26 U.S.C. § 4231(6) (1964).[1] It is not a simple one.

Roberto together with others operated what was known as Club Caborrojeno where the management for an admission charge provided continuous dancing to live music consisting of a Latin dance band and a vocalist and where at the same time food and drink were served for an additional charge. The taxes were imposed against the appellant as the operator of a cabaret under 26 U.S.C. § 4231(6) (1964), which provided for a "tax equivalent to 10 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit." "Cabaret" was defined in 26 U.S.C. § 4232(b) as follows:

"The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise."

In 1951 this Section's predecessor (Section 1700(e)(1) of the 1939 Internal Revenue Code, 65 Stat. 452) was amended by the addition of the following sentence:

"In no case shall such term include any ballroom, dance hall, or other similar place where the serving of food, refreshment, or merchandise is merely

---

* Of the Eastern District of New York, sitting by designation.

1. Repealed, effective December 31, 1965.

incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret or other similar place.'"

It is the application of this amendment to the facts of this case which is the essence of the controversy. To understand the amendment, reference must be made to the district court's decision in *Geer* v. *Birmingham,* 88 F.Supp. 189 (M.D.Iowa, 1950), *rev'd,* 185 F.2d 82 (8th Cir. 1950). In that case Judge Graven held that a dance hall or ballroom which operated a fountain which sold only soft drinks and confections but no meals or sandwiches and in which the ratio of seating capacity to a dance hall capacity was only 17½%, was exempt from the cabaret tax, stating:

"It is further clearly and satisfactorily established that ballrooms are amusement establishments of a class and type which are separate, distinct, and dissimilar from 'cabarets' and 'roof gardens' and that they have been and are so commonly and generally regarded." 88 F.Supp. at 229.

In its House Report Congress stated that it was the purpose of this amendment to make it clear that the holding of the *Geer* Court of Appeals was not to be followed but that the principles set forth by the district court in *Geer* were "controlling in the determination of whether the establishment involved is operating as a cabaret or as a dance hall, and to avoid the broad construction placed upon the statute in the case of *Avalon Amusement Corporation* v. *United States,* (165 F.2d 653) . . . ." H.R.Rep.No.586, 82d Cong. 1st Sess., 2 U.S.Code, Cong. and Admin.Serv. p. 1915 (1951).

■ While the distinction between the two extremes known as a "model" cabaret and a "model" dance hall might be clear, such a distinction is far from being obvious when reference is made to the phrase in § 4231 of the statute reading: "or other similar place furnishing a public performance for profit" and to the phrase in § 4232(b) of the statute reading: "or other similar place where the serving of food, refreshment, or merchandise is merely incidental." Different factual patterns present different types of operation not too susceptible of classification and, as in this case, are frequently of a "hybrid" nature. In order to escape the cabaret tax, Roberto, the taxpayer, had the burden of proving that the serving and selling of food, refreshment, and merchandise in his establishment were merely "incidental" to the conduct of the dance hall. *Landau* v. *Riddell,* 255 F.2d 252 (9th Cir. 1958). What is "incidental" under the circumstances is a mixed question of law and fact. *Stevens* v. *United States,* 302 F.2d 158 (5th Cir. 1961). After the trial the district court here made detailed findings of fact in support of its judgment, which are found in 357 F.Supp. 862 (S.D. N.Y.1973) and are largely uncontested.

■ Judge Levet found that the gross receipts of Roberto from the sale of food and drink varied from a low of 65.1% to a high of 74.7%; that the admission receipts varied from a low of 23.7% to a high of 33.2%; that the revenue received from admissions was insufficient to equal the payroll expenses; that the size of the dance floor was only 19% of the total area of the Club;[2] that during the Club's hours of operation the patrons were able to purchase liquor and hot and cold food items; that the Club opened for business one and a half to two hours before the dance music began and continued open until 3 A.M., and that the Club had a seating capacity at least equal to its patron capacity. Thus, there is substantial evidence to support the district court's conclusion that the serving or selling of food, refreshment, or merchandise in the appellant's Club was

**2.** Contrary to appellant's assertions, this figure was computed with reference only to the usable floor area of the Club, and such areas as the staircase, the lobby, restrooms and air conditioning rooms were not included in the total area of the Club.

not "merely incidental" to the operation of the dance hall.

Predicated upon the totality of circumstances, particularly the large proportion of gross receipts of the Club attributed to the sale of food and refreshments, we do not find clearly erroneous the findings of the court below holding that the appellant's operation fell within the statutory definition of "cabaret" and was subjected to the cabaret tax. Much lower percentages of gross receipts from food and refreshment sales have been held sufficient to bring an establishment within the purview of the statute. See, e. g., *Dance Town, U.S.A., Inc.* v. *United States,* 319 F.Supp. 634 (S.D.Tex.1970), *aff'd,* 446 F.2d 882 (5th Cir. 1971), (45.1%); *Shutter* v. *United States,* 406 F.2d 906 (7th Cir. 1969), (47.0%); *Luna* v. *Campbell,* 302 F.2d 166 (5th Cir. 1962), (60.8%); *Stevens* v. *United States, supra,* (67.0%); *Billen* v. *United States,* 273 F.2d 667 (10th Cir. 1960), (50.0%); and *Anderson* v. *United States,* 62–2 USTC 15,415 (D.Col.1962), (56.0%).

■ Appellant claims error in the district court's exclusion from the evidence of Union and Police Department classifications of the Club, advertising material, and the proportion of gross profits attributable to the sale of refreshments. The first two exclusions were proper. Appellant did not make an offer of proof, as was made before the district court in *Geer,* of the characteristics of an ideal ballroom from the testimony of union and other officials; rather he sought the conclusory opinions of police and union officials with respect to the classification of the particular establishment in question. In any event, the excluded evidence in both cases was largely irrelevant since what may be seen by many as a "ballroom" may nevertheless be taxable if its service of refreshments is not "merely incidental." *Stevens* v. *United States, supra,* 302 F.2d at 163. While the relative proportion of gross profits or income derived from the sale of refreshments is a relevant factor and should be considered together with other factors in determining whether such sales are "merely incidental," *Dance Town, U.S.A., Inc.* v. *United States, supra; Stevens* v. *United States, supra; Landau* v. *Riddell, supra; Billen* v. *United States, supra,* the relative percentage of gross receipts is probably a more important single index. Appellant, however, did not offer admissible evidence upon this issue but, instead, offered an oral estimate by an interested witness unsupported by any documents. Under the circumstances, this evidence was incompetent and was properly excluded.

■ Finally, appellant contends that the Government by accepting his tax returns for eleven years without notice of his liability for the cabaret tax, is estopped from later assessing the tax against him. Although the result here does seem harsh, there is no basis for such estoppel. See *Automobile Club of Mich.* v. *C.I.R.,* 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *Altman* v. *Connally,* 456 F.2d 1114, 1116 (2d Cir. 1972); *H. F. Campbell* v. *C.I.R.,* 443 F.2d 965 (6th Cir. 1971); *Easter* v. *C.I.R.,* 338 F.2d 968 (4th Cir. 1964), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433 (1965); *Caldwell* v. *C.I.R.,* 202 F.2d 112, 115 (2d Cir. 1953); *Seeley* v. *Helvering,* 77 F.2d 323, 324 (2d Cir. 1935).

Affirmed.